[Crim. No. 10917. Third Dist. Apr. 28, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
TIBOR BELA KARSAI, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Mark E. Cutler, Chief Assistant State Public Defender, and Lisa Short, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and William George Prahl, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**REYNOSO, J.**[*]—Defendant Tibor Bela Karsai appeals from a judgment sentencing him to state prison for the term of 26 years after a jury found him to be guilty of false imprisonment with force (Pen. Code, § 236),[1] oral copulation by force (§ 288a, subd. (c)), and rape by force or violence (§ 261, subds. (2), (3)). Defendant contends: the evidence is insufficient to support the conviction for rape; the jury was improperly instructed on the element of penetration in a rape case; the trial court erred in instructing the jury on flight after the commission of a crime; the trial court committed numerous sentencing errors; his sentence constitutes cruel and unusual punishment; and his sentence violates equal protection of the law.

We hold that in order to constitute the crime of rape vaginal penetration is not necessary; any penetration of the female genitalia by the penis, however slight, is sufficient. The evidence supports the jury's finding that defendant made actual sexual penetration and is guilty of rape. We reject the contentions that the California sentencing scheme for violent sexual offenses constitutes cruel and unusual punishment or violates equal protection of the law. We reject each of defendant's other contentions and affirm the judgment.

Defendant encountered the 16-year-old victim in a bowling alley while she was using the telephone. It is necessary to relate the ugly facts which follow. Defendant called "Hey look," and exposed his penis to the young woman. When she began to walk away defendant grabbed her from behind, held his hands over her face, and dragged her into the men's bathroom. Defendant took the victim into a stall and forced her to insert her fingers into her sexual orifice, at the same time he forced her to call herself and her mother "whores." Defendant ordered the victim to lick her fingers and he pushed his fingers into her vagina. Defendant forced the victim to orally copulate him during which he ejaculated. He then sat on the toilet and forced the victim to sit on his lap while he attempted intercourse with her. Throughout this time defendant constantly threatened the victim with death if she disobeyed his orders.

---

[*]Assigned by the Chairperson of the Judicial Council.
[1]All statutory references are to the Penal Code unless otherwise noted.

The above scenario was undisputed. Defendant admitted all of this during his own testimony. The factual issue at trial was whether defendant succeeded in his attempt to rape the victim. The victim testified that defendant's penis was erect and that he pushed it between her "lips." Defendant did not succeed in full penetration. Defendant denied any penetration. He testified that he was not erect because he had just ejaculated during the oral copulation, and that he merely rubbed his flaccid penis against the victim's genitalia.

The jury rejected defendant's version and found him to be guilty of rape as well as oral copulation and false imprisonment. The trial court found that defendant had suffered a previous conviction for rape, and a previous conviction for oral copulation. Defendant was sentenced to the upper term of eight years for the oral copulation conviction, and to the upper term of eight years for the rape conviction, the terms to be fully consecutive. This sentence was enhanced by five years for each of defendant's prior convictions for sex offenses. The court stayed the sentence for false imprisonment pursuant to section 654. The total unstayed prison term was computed to be 26 years.

I

Defendant contends that the evidence does not support his conviction for rape. He argues that there was insufficient evidence of the essential element of sexual penetration. In considering this contention we must review the entire record to determine whether a reasonable trier of fact could have found beyond a reasonable doubt that defendant achieved sexual penetration. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738].)

"The essential guilt of rape consists in the outrage to the person and feelings of the victim of the rape. Any sexual penetration, however slight, is sufficient to complete the crime." (§ 263.) Defendant bases his argument on the fact that the victim testified that he did not penetrate her vagina with his penis. Defendant errs, however, in his conclusion that vaginal penetration is necessary to commit a rape. The penetration which is required is sexual penetration and not vaginal penetration. Penetration of the external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape even if the rapist does not thereafter succeed in penetrating into the vagina.

Although we have found no California decisional law directly on point,[2] the conclusion we reach is the universal rule among those jurisdictions which have considered the question. (Annot., Rape—What Constitutes "Penetration" (1977) 76 A.L.R.3d 163, § 3, pp. 178-183.) Moreover, our conclusion is in accordance with the clear intent of section 263 which states that any penetration however slight is sufficient.

The victim testified that she felt defendant's penis in the area of her private parts and that it was "between my lips." It did not extend into her vagina; however, she felt pressure on the entrance to her vagina which hurt. She believed that defendant's penis was inside her body, although not inside her vagina. She clarified that she believed the penis to be inside her when it was between her major and minor lips (the labia majora and minora) and at the entrance to her vagina. The physician who examined the victim after the rape testified that he observed a mild erythema, or redness, about the vagina introitus, which is at the opening of the vagina. In his opinion this was consistent with contact with an erect penis. This evidence supports the jury's determination that defendant made sexual penetration and is sufficient to support his conviction for rape.

## II

■ Defendant contends that the trial court erred in instructing the jury on the issue of penetration. The People requested that the trial court instruct the jury that "Penetration of the lips of a female's vagina is sufficient to constitute rape." The trial court said "Yes. Well, the only instruction that we had any dispute about, I think, is that special instruction that you submitted with respect to further definition of penetration. And I have concluded not to give that unless the jury has some difficulty understanding it and requests more clarification at which time the court will give further definition."

The jury retired to deliberate at 4:12 p.m. It returned at 5:15 p.m. to ask: "We the jury in the above-entitled case request the following: The definition of when penetration occurs in relation to external female

---

[2]In *People v. George* (1949) 91 Cal.App.2d 537 [205 P.2d 464], cited by respondent there was evidence of actual vaginal penetration, although not complete vaginal penetration, and the question we face was not .reached. In *People v. Esposti* (1947) 82 Cal.App.2d 76 [185 P.2d 866], the court was considering a conviction for attempted rape in which penetration was not required. The court stated in dictum that penetration of the lips of the vagina would be sufficient to constitute rape. (At p. 78.)

genitalia." The court then stated: "You recall that the court instructed you that if the other requisite elements of the crime of rape are established any sexual penetration, however slight, is sufficient to complete the crime. The word penetrate means to pass, extend, or pierce into or through something. Any penetration into the female genitalia constitutes a sexual penetration." The jury returned the guilty verdicts shortly thereafter.

Defendant emphasizes the last sentence of the further instruction which states that "any penetration into the female genitalia constitutes a sexual penetration," and argues that the jury could have taken this to mean penetration with anything, possibly a finger. Since it was admitted that defendant forced the victim to insert her own fingers into her vagina, and admitted pushing his fingers there, it is asserted that the jury could have found him guilty on that basis.

We disagree that there was any possibility the jury could have been confused by the court's instruction. The trial court instructed the jury on the elements of rape by force and on the elements of rape by threat. Throughout these instructions the court repeatedly stated that rape involves sexual intercourse, and that such sexual intercourse must be proven. The court then informed the jury that if the other elements are proven any sexual penetration is sufficient and that emission is not necessary. The opening statements of both counsel focused on the requirement of penetration with a penis, and closing argument likewise focused on that issue. In view of the record it is inconceivable that the jury could have twisted the court's additional instruction to mean penetration by anything other than penetration with a penis.

Defendant argues that the court's instruction failed to fully explain the difference between rubbing or "humping" and actual sexual penetration. He thus argues that he could have been convicted merely because he rubbed his penis against the victim's sexual parts, a fact which he admitted. The court defined penetration in accordance with the dictionary definition. (See Webster's New Collegiate Dict. (1977) Penetrate, p. 847.) Moreover the word penetration is not a word which should be confusing. The jury's concern appears to have been the same as defendant's; that is, whether penetration of the external sexual organs is sufficient. Since the court properly instructed in that regard we find no error.

Defendant finally argues that the court should not have given the additional instruction without informing counsel that it intended to do so. Penal Code section 1138 provides: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called." The court complied with this statute. When it gave the jury the further instruction defendant, his counsel, and the prosecuting attorney were present. No error occurred.

## III

Defendant contends that the trial court erred in giving the standard jury instruction on flight after crime (CALJIC No. 2.52), which provides: "The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine." This language is in accordance with Penal Code section 1127c, which provides that where evidence of flight is relied upon to show guilt the court shall instruct in that language, and that no further instruction on the subject need be given.

Defendant argues that there was no evidence of flight. We disagree. As defendant left the bathroom he told the victim to lay her head on the toilet and stay there for 10 minutes. Two witnesses that had used the bathroom during the attack had observed two sets of feet under the stall and they waited outside of the bathroom to find out who was in the stall. They observed defendant leave the bathroom and go directly to his truck, and in the words of the witness "fly" out of the parking lot in the truck. Defendant was driving very fast. Defendant's rapid departure immediately after the commission of the crime was sufficient evidence of flight to support the instruction.

Defendant argues, however, that the instruction was error because he did not deny that he was the perpetrator. According to this argument there was no need to rely upon evidence of flight to show consciousness of guilt, because the only issue involved was whether he

succeeded in his criminal attempt and evidence of flight would be irrelevant to prove that issue. (See *People* v. *Anjell* (1979) 100 Cal.App.3d 189, 200 [160 Cal.Rptr. 669].) The approach is mistaken in that the issue of penetration was not the sole factual issue at trial. If the jury had accepted defendant's version, that no penetration occurred, then it would have had to determine whether defendant was guilty of attempted rape. Attempted rape, unlike rape, is a specific intent crime. The prosecution would therefore have to prove that defendant harbored the specific intent to commit rape. Defendant presented a diminished capacity defense in this regard. He testified that he had been drinking heavily, and presented expert testimony on the effects of alcohol on a person. Evidence that an accused had a consciousness of guilt immediately after the attempted commission of a crime rebuts the contention that he was incapable of maintaining the mental element necessary in a charge of attempt to commit the crime. His flight was therefore relevant and the instruction was properly given.

## IV

Defendant was sentenced under Penal Code sections 667.6 and 1170.1, subdivision (h), which are set forth in full in the margin.[3] The effect of sections 667.6 and 1170.1, subdivision (h) is to dramatically increase the prison term which a person convicted of one or more violent sex offenses may receive. Pursuant to those sections defendant received a sentence of eight years for the oral copulation conviction; a full, separate consecutive term of eight years for the rape conviction; and two five-year enhancements for his two prior convictions of violent sex offenses (rape by force and oral copulation by force). The total prison term was thus calculated to be 26 years. Defendant contends that the court committed numerous sentencing errors, that the length of the sentence constitutes cruel and unusual punishment, and that the length of his sentence violates equal protection of the laws.

---

[3]Penal Code section 667.6 provides: "(a) Any person who is found guilty of violating subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm who has been convicted previously of any such offense shall receive a five-year enhancement for each such prior conviction provided that no enhancement shall be imposed under this subdivision for any conviction occurring prior to a period of 10 years in which the person remained free of both prison custody and the commission of an offense which results in a felony conviction.

"(b) Any person convicted of an offense specified in subdivision (a) who has served two or more prior prison terms as defined in Section 667.5 for any offense specified in

A. *Sentencing Errors.*

■ Defendant contends that the trial court erred in failing to state its reasons for imposing a full, separate and consecutive term for his conviction for rape after it had imposed the upper term for the oral copulation conviction. Penal Code section 667.6 subdivision (d) provides that where a defendant is convicted of certain multiple sexual offenses against separate victims, or against the same victim on separate occasions, a full, separate and consecutive term shall be served. Penal Code section 667.6, subdivision (c) provides that where the defendant is convicted of multiple violent sexual offenses against the same victim on the same occasion, a full separate and consecutive term may be imposed. Where the convictions are for offenses against the same victim on the same occasion, the trial court must exercise its discretion in determining whether to sentence the defendant under Penal Code section 1170.1, or,

---

subdivision (a), shall receive a 10-year enhancement for each such prior term provided that no additional enhancement shall be imposed under this subdivision for any prison term served prior to a period of 10 years in which the person remained free of both prison custody and the commission of an offense which results in a felony conviction.

"(c) In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm whether or not the crimes were committed during a single transaction. If such term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment. Such term shall not be included in determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the time such person would otherwise have been released from prison.

"(d) A full, separate, and consecutive term shall be served for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm if such crimes involve separate victims or involve the same victim on separate occasions.

"Such term shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment. Such term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the time such person would otherwise have been released from prison."

Penal Code section 1170.1, subdivision (h) provides: "(h) For any violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or sodomy or oral copulation by force, violence, duress, menace or threat of great bodily harm as provided in Section 286 or 288a, the number of enhancements which may be imposed shall not be limited, regardless of whether such enhancements are pursuant to this or some other section of law. Each of such enhancements shall be a full and separately served enhancement and shall not be merged with any term or with any other enhancement."

in lieu of that, under section 667.6, subdivision (c). Defendant argues that the decision to sentence under section 667.6, subdivision (c) rather than section 1170.1, is a sentence choice for which the court must state its reasons. (See Pen. Code, § 1170, subd. (c); *People* v. *Walker* (1978) 83 Cal.App.3d 619, 622 [148 Cal.Rptr. 66].)

Defendant errs in asserting that the trial court did not state its reasons for sentencing under section 667.6, subdivision (c). At the time of sentencing defendant inquired whether the court intended to sentence under that section, and the court indicated that it did. After discussing the factors in aggravation and mitigation the court stated that it imposed the sentence for the rape consecutively because defendant was on parole at the time of the present offenses. The record establishes that defendant was convicted in 1975 of rape and oral copulation by force or threat, committed to state prison, and released on parole in late March 1979. He committed the present offenses less than one year after his release while he was still on parole. Such a factor well supports the court's decision to impose sentence under section 667.6, subdivision (c), in lieu of the less lengthy term which could be imposed under section 1170.1. When the court determined to apply the provisions of section 667.6, subdivision (c), there was no further decision to be made regarding consecutive or concurrent sentencing, and the court was not required to state reasons for imposing consecutive sentences as well as reasons for sentencing under section 667.6, subdivision (c).

█ Defendant contends that the trial court could not determine to sentence him under Penal Code section 667.6, subdivision (c), because the judicial council has not promulgated a specific sentencing rule applicable to that determination. We disagree. In California Rules of Court, rule 425, the judicial council set forth the factors which affect the decision to impose consecutive rather than concurrent sentences. The decision to sentence a defendant under Penal Code section 667.6 subdivision (c) rather than section 1170.1, is a decision concerning consecutive rather than concurrent sentencing, and the factors listed in rule 425 are the proper factors to consider in making that choice. It would be contrary to the legislative intent of Penal Code section 667.6, subdivision (c) to hold that a trial court could not exercise the discretion granted until the judicial council provides a specific rule governing that choice when the rule would of necessity be a mere reiteration of existing rule 425. The trial court properly considered the factors affecting the decision to sentence defendant to consecutive terms and stated its reasons clearly and concisely. No more was required.

■ Defendant objects to the court's determination that the upper terms should be imposed for the rape and the oral copulation convictions. In sentencing defendant to the upper terms the court found four factors in aggravation: the crimes involved the threat of great bodily harm, including threats of death; the victim was particularly vulnerable; defendant has engaged in a pattern of violent conduct which indicates that he is a danger to society; and defendant has numerous prior convictions of increasing and repeated seriousness. The court found only one factor in mitigation, that defendant's progress on parole was generally satisfactory. The court determined that each of the factors in aggravation justified the upper terms, and that any one of the factors would outweigh the factor in mitigation.

■ Defendant contends that the trial court erred in finding as factors in aggravation that the crimes of which he was convicted involved threats of death or grave bodily injury and violence. He argues that force and fear were the means by which the crimes were committed and were thus elements of the crimes. He is wrong. It is established that where a defendant uses force and fear beyond that which is necessary to accomplish his criminal purpose such use of force and fear may be considered in aggravation of the crimes. (See *People* v. *Ramos* (1980) 106 Cal.App.3d 591, 602 [165 Cal.Rptr. 179]; *People* v. *Cortez* (1980) 103 Cal.App.3d 491, 496 [163 Cal.Rptr. 1].) And where the manner of committing a crime exhibits viciousness and callousness beyond that necessary to the perpetration of the crime such fact may also be considered by the sentencing court. (*People* v. *Hawk* (1979) 91 Cal.App.3d 938, 941 [154 Cal.Rptr. 773].) Defendant engaged in a vicious and callous course of conduct aimed not only at forcing the victim to submit to his sexual demands, but at degrading and terrorizing her as well. He exposed himself to the victim, physically overpowered her and forced her into the isolation of a stall in the men's bathroom, forced her to violate herself with her own fingers and then to lick her fingers, forced her to call herself and her mother "whores," forced her to orally copulate him and to submit to rape, and continually threatened to kill her. Such a course of conduct cannot be considered an essential element of the sexual crimes and the trial court properly found this factor in aggravation.

■ Defendant takes issue with the trial court's finding that the victim was particularly vulnerable. He argues that the concept of being a victim implies vulnerability and that some relative egregiousness must be present in order to support a finding of particular vulnerability. If we

accept defendant's argument that relative egregiousness must be present, it is nevertheless of no avail to him. While age and physical traits are not the only factors which may indicate particular vulnerability, they are the most obvious. (See *People* v. *Ramos, supra*, 106 Cal. App.3d at p. 607.) The victim in this case was 16 years old at the time of the crimes. Her youthful age and the relative ease with which defendant was able to physically overpower her indicate that she was particularly vulnerable to defendant's depredations.

 Defendant argues that the trial court improperly found that he has numerous convictions of increasing seriousness. While the record shows that this is clearly true, defendant argues that his 1975 convictions for rape and oral copulation must be disregarded because he received enhancement of his sentence for those prior convictions. It has been held that prior convictions may not be used both to enhance a sentence and as factors in aggravation. (*People* v. *Roberson* (1978) 81 Cal.App.3d 890, 892 [146 Cal.Rptr. 777].) It is unnecessary to consider, however, whether defendant's prior record supports a finding of numerous prior convictions of increasing seriousness when the 1975 convictions are disregarded. In sentencing defendant the trial court made it clear that each of the factors in aggravation outweighed the sole factor in mitigation and that each factor in aggravation alone supported the imposition of the upper terms. In view of the careful record made by the trial court it is not reasonably possible that a different prison term would have been selected without regard to defendant's prior convictions and thus there was no error which requires remand for resentencing. (*People* v. *Dozier* (1979) 90 Cal.App.3d 174, 179 [153 Cal.Rptr. 53].)

## B. *Cruel and Unusual Punishment.*

 Defendant does not contend that the eight-year upper term which may be imposed for rape or forcible oral copulation in itself constitutes cruel and unusual punishment. He argues instead that the unlimited enhancements and the provision for full, separate and consecutive sentences result in possible prison terms grossly disproportionate to the nature of the offenses. In essence, defendant argues that Penal Code sections 667.6 and 1170.1, subdivision (h) constitute cruel and unusual punishment. Defendant's argument is illustrated by the fact that had he committed his crimes prior to the effective date of those sections his maximum possible prison sentence would have been one-half of that he received (eight years upper term for oral copulation,

plus two years for one-third the middle term for rape, plus three years for a prior prison term under § 667.5).

Under our tripartite system of government it is the function of the Legislature to define crimes and prescribe punishments and such questions are in the first instance for the judgment of the Legislature alone. (*In re Lynch* (1972) 8 Cal.3d 410, 414 [105 Cal.Rptr. 217, 503 P.2d 921].) The Legislature is afforded the broadest possible discretion in performing this function, but the final judgment whether the punishment exceeds constitutional limits is a judicial function. (*Ibid.*) Courts should not lightly reject the Legislature's judgment and its determination should be upheld unless unconstitutionality is clearly, positively and unmistakably shown. (*Id.*, at pp. 414-415.)

In California a punishment may violate the Constitution if, although not cruel and unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity. (*Id.*, at p. 424.) In considering this question courts look to three criteria: (1) The nature of the offense and/or the offender with particular regard to the degree of danger both present to society; (2) a comparison of the challenged penalty with the punishments prescribed in the same jurisdiction for different offenses which must be deemed more serious; and (3) a comparison of the challenged punishment with the punishments prescribed for the same offense in other jurisdictions having the same constitutional provision. (*Id.*, at pp. 425-427.)

The offenses and offenders at which Penal Code sections 667.6 and 1170.1, subdivision (h) are aimed are what might be termed "violent" sexual offenses and offenders. They involve the use of force or fear to accomplish the most personal invasion of another person's self possible. The essential guilt of rape consists of the outrage to the person and feelings of the victim. (§ 263.) The same is true of the other violent sexual offenses which call section 667.6 into play. "It has been noted that '[i]n the crime of rape, the victim is not only deprived of automony and control, experiencing manipulation and often injury to the envelope of the self, but also intrusion of inner space, the most sacred and most private repository of the self. It does not matter which bodily orifice is breached. Symbolically they are much the same and have, so far as the victim is concerned, the asexual significance that forceful access has been provided into the innermost source of ego.' (Bard & Ellison, *Crisis Intervention and Investigation of Forcible Rape*, The Police Chief

(May 1974) at pp. 68, 71.)" (*People* v. *Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274], conc. op. of Bird, C. J., at p. 589.)

In enacting Penal Code section 667.6 the Legislature has chosen to treat violent sex offenses and violent sex offenders in a manner differently than other types of offenses and offenders. The statute is directed at recidivism by providing for longer enhancements for prior convictions of the same type of offense. The statute is directed at multiplicity of offenses by providing for full, separate, consecutive sentencing. In view of the outrageous nature of violent sexual offenses and the manifest danger to society from recidivism and multiplicity of offenses, we cannot say that the severity of the punishment is so disproportionate to the crimes so as to shock the conscience and offend fundamental notions of human dignity.

Defendant's attempt to illustrate that his punishment is excessive when compared to different offenses which must be deemed more serious fails. Defendant notes that the punishment for first degree murder without special circumstances is 25 years to life and that the punishment for second degree murder is 15 years to life. (Pen. Code, § 190.) It is thus conceivable that a murderer could be released from prison in a shorter time than defendant. Defendant overlooks, however, that the punishment for murder is an indeterminate sentence and a murderer could conceivably serve a far longer term than defendant. In light of this potential we cannot say that the indeterminate sentencing scheme for murder indicates that defendant's 26-year sentence is disproportionate.

Moreover, defendant's sentence is not the product of an isolated conviction for a single offense but is the result of his conviction for multiple violent sex offenses after having previously been convicted of multiple violent sex offenses. A person convicted of first degree murder who is convicted in the same proceeding of another count of first or second degree murder or who has previously been convicted of first or second degree murder is punished either with death or by life imprisonment without the possibility of parole. (Pen. Code, § 190.2.) Defendant's sentence is certainly less onerous than that punishment alternative.

Defendant's argument that voluntary, involuntary or vehicular manslaughter and various aggravated assaults carry lesser punishments than violent sex offenses is not convincing. We are not persuaded that those offenses "must be deemed more serious" than the violent sex offenses of

which defendant was convicted. (*In re Lynch, supra*, 8 Cal.3d at p. 426.)

In comparing California's punishment scheme for sexual offenders to those of other determinate sentencing states, defendant candidly admits: "The result is that most of these states appear to have comparable penalties for the types of convictions appellant suffered, . . ." Defendant compares his sentence to the average or median time actually served by rapists in indeterminate sentencing states in support of his claim that his sentence is disproportionate. That comparison is invalid, however, because the figures cited provide an average or median time served for all rape convictions, including those for single offenses, nonviolent offenses, and first time offenders. (See the Judicial Council's Sentencing Practices Quarterly, No. 2, Quarter Ending Dec. 31, 1977, pp. 18-19.) Defendant, who was convicted of multiple violent sex offenses with prior convictions for same type offenses, should naturally serve a longer prison term than the average or median term served by all sex offenders.

After giving due deference to the legislative judgment we cannot say that California's statutory scheme for the punishment of violent sex offenders constitutes cruel and unusual punishment.

We also reject defendant's argument that his sentence is excessive in view of the ordinary and nonaggravated character of his crimes. Part of defendant's sentence is attributable to the fact that he is a repeat offender and part is attributable to the character of the crimes for which he now stands convicted. Recidivism has long been a factor considered in determining the length of a prison sentence. (See former Pen. Code, § 644; and current §§ 667.5 and 667.6.) And, as we noted in our discussion of defendant's allegations of sentencing error, his current crimes were neither ordinary nor nonaggravated.

C. *Equal Protection.*

Defendant argues that the potential sentence under Penal Code section 667.6 violates equal protection of the law. He asserts that the Legislature has treated some members of the class (those convicted of violent felonies) differently than others.

The basic rule of equal protection is that those persons similarly situated with respect to the legitimate purpose of the law must receive like

treatment. (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].) It is in this regard that defendant's argument must be rejected. He has chosen too broad a class for equal protection analysis. Defendant is not merely a person convicted of a violent offense; he is a person convicted of multiple violent sex offenses with multiple prior convictions of the same type. Violent sex offenses differ from other types of offenses in many ways, including the reasons and motive of the criminal, the outrage and harm to the victim, and the potential for danger to the victim and society in general. These differences compel different treatment. We conclude that violent sex offenders are not similarly situated with other offenders and thus may be treated differently. (See *People* v. *Hernandez* (1979) 100 Cal.App.3d 637, 645 [160 Cal.Rptr. 607].)

In any event, in determining whether an enhancement may be applied to a person convicted of certain offenses where it would not be applied to others the question is whether the Legislature had a rational basis for the classification. (See *In re Kapperman* (1974) 11 Cal.3d 542, 548 [114 Cal.Rptr. 97, 522 P.2d 657]; *People* v. *Hernandez, supra,* 100 Cal.App.3d at p. 644, fn. 2.) We have noted that Penal Code section 667.6 is directed at recidivism and multiplicity of offenses. The Legislature could rationally conclude that those matters present a special problem and danger to society in sex offense cases and that they merit special treatment. We cannot say that the statute lacks any rational purpose.

The judgment is affirmed.

Puglia, P. J., and Blease, J., concurred.

A petition for a rehearing was denied May 26, 1982, and appellant's petition for a hearing by the Supreme Court was denied July 14, 1982. Mosk, J., was of the opinion that the petition should be granted.