Filed 7/26/13  P. v. Webb CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICKAEL DEANDRE WEBB,<br><br>    Defendant and Appellant. | D061399<br><br><br><br>(Super. Ct. No. SCD230595) |

APPEAL from a judgment of the Superior Court of San Diego County, Kerry Wells, Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Ronald A. Jakob and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Mickael Deandre Webb on two counts—counts 3 and 4—of forcible anal or genital penetration (Pen. Code,[1] § 289, subd. (a)), and one count—count 5—of assault by means of force likely to produce great bodily injury (§ 245 subd. (a)(1)). It found true allegations that Webb personally inflicted great bodily injury in committing the crimes (§ 12022.8 [counts 3 and 4]; § 12022.7 subd. (a), 1192.7 subd. (c)(8) [count 5]). The trial court found Webb had suffered a prior prison conviction. (§ 667.5 subd. (b).) It sentenced Webb to prison for 31 years to life—one indeterminate term of 15 years to life (§ 667.1 subds. (b), (c) & (e) [count 3]), one consecutive indeterminate term of 15 years to life (§ 667.1 subds. (b), (c) & (e) [count 4]), and one consecutive one-year term for the prison prior. The court also imposed and stayed under section 654 the three-year term for count 5 and the corresponding enhancement.

Webb contends there is insufficient evidence of sexual penetration under section 289 subdivision (a) as to counts 3 and 4. We affirm.

FACTS

On or about October 23, 2010, Webb and Angelique M. communicated via the Internet, arranged to meet at a mall, and, after talking there, decided to relocate to Angelique's apartment. When they arrived, Webb followed Angelique into her bedroom, immediately pushed her onto the bed, began to undo her pants and, when she resisted, strangled her until she blacked out. Angelique briefly awoke, but passed out again after Webb—then on top of her—choked her again. Angelique later found herself unclothed

---

[1] All statutory references are to the Penal Code unless otherwise specified.

2

on the bed, her phone and wallet were missing and Webb was gone.[2] Angelique went to a neighbor's apartment and waited there while the neighbor called the police, who escorted Angelique to a hospital.

Sexual assault nurse examiner Claire Nelli observed injuries to Angelique's hymen, posterior fourtchette, and fossa navicularis. The injuries were fresh and "consistent with something being inserted into the vagina." According to Nelli, the injuries' severity indicated the penetrating object lacked a "helper," such as lubricant, "wanting to have sex, [or] be[ing] in the right position that [so] everything goes as smoothly as possible." She testified it was not likely that the injuries to Angelique's hymen and vagina were caused by something other than a penetrating object. Nelli also found abrasions, bruises, and swelling consistent with insertion of an object, penis, or fingers in the rectal opening, as well as "far in[to]" and "almost out" of Angelique's anal canal. A criminalist testified that he found no male DNA on swabs of Angelique's vagina or anus.

During the exam, Angelique stated that she had not had anal or vaginal intercourse within the month prior to the incident, nor had she experienced injury or medical problems in either region. At trial, Angelique testified that she felt no soreness or pain in her anal or vaginal regions in the five days after the attack.

---

[2]     Webb agreed the two met at the mall and went to Angelique's apartment, but testified that after Angelique attempted to prostitute herself to him, he left while an unidentified man remained in the apartment.

DISCUSSION

Unlawful penetration with a foreign object under section 289 is "an act of sexual penetration when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim." (§ 289, subd. (a)(1)(A).) "Sexual penetration" is defined to include "the act of causing the penetration, however slight, of the genital or anal opening of any person . . . for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." (§ 289 subd. (k)(1).) Any " '[f]oreign object,' . . . include[s] any part of the body . . . ." (§ 289, subd. (k)(2).)

Webb contends there is insufficient evidence to prove sexual penetration to support his convictions of rape by a foreign object. He characterizes Nelli's findings as inconclusive and claims Nelli "could not determine that something had been inserted or touched Angelique's vaginal area, but only that she found injury there, and there were no findings as to the anal area." He also points out that the crime laboratory technician identified no male DNA inside Angelique, Angelique experienced no vaginal or anal discomfort, and she could not recall what had happened while she was unconscious. Webb argues reversal is compelled by *People v. Karsai* (1982) 131 Cal.App.3d 224, 231-235 (*Karsai*) (overruled on other grounds by *People v. Jones* (1988) 46 Cal.3d 585, 600) because unlike that case, Angelique could not testify that Webb penetrated her, and the People presented only weak physical evidence.

4

When determining the sufficiency of the evidence, an appellate court reviews the whole record in favor of the judgment and affirm unless no rational factfinder could have found guilt beyond a reasonable doubt from evidence that "is reasonable, credible, and of solid value," even if the factfinder relied solely on inconsistent or circumstantial evidence, or evidence indicative of a contrary conclusion. (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see *People v. Gammage* (1992) 2 Cal.4th 693, 700 [uncorroborated testimony of prosecutrix sufficient]; *People v. Leigh* (1985) 168 Cal.App.3d 217, 221.)

We do not reweigh the evidence or resolve conflicts in it. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) " 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' [Citation.] Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction." (*People v. Elliott* (2012) 53 Cal.4th 535, 585.)

Webb's focus on evidence favorable to him in the record contravenes these standards. And he mischaracterizes Nelli's conclusions, ignoring her testimony that she found Angelique's injuries to the vaginal and anal areas consistent with forced penetration by some object. The jury could reasonably deduce that penetration occurred based on Angelique's and Nelli's testimony: Angelique recounted that Webb began to undress her before he strangled her, she recalled Webb on top of her and later awoke undressed, and Nelli detailed injuries that were likely from insertion of a foreign object. The criminalist agreed that use of a condom would eliminate the presence of sperm, and

5

the jury could conclude that this would explain the absence of male DNA. Although Webb points to facts he claims could lead to acquittal, it is for the jury to conclude on which side of the fence any wavering evidence falls. (See *Johnson*, *supra*, 26 Cal.3d at p. 578.) The evidence amply supports the jury's determination that Webb sexually penetrated Angelique under section 289.

We are unpersuaded by Webb's claim that we should apply *Karsai* to reverse the convictions based on Angelique's inability to testify to penetration and the absence of male DNA. We analyze each case's "unique facts and inferences," and thus "comparisons between cases [offer] . . . little value." (*People v. Rundle* (2008) 43 Cal.4th 76, 137-138, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421.) Even if we looked to *Karsai* to assess the sufficiency of the evidence in this case, it would not require reversal. *Karsai* upheld a conviction for rape by means of force or violence based on physical evidence (redness at the victim's vaginal opening), and the victim's recollection of the event. (*Karsai*, *supra*, 131 Cal.App.3d at pp. 232-233.) We decline to reverse convictions of this sort for the absence of direct testimony of penetration by the victim. It is well settled that "the substantial evidence rule does not require that the evidence supporting defendant's conviction be direct evidence." (*People v. Lopez* (2013) 56 Cal.4th 1028, 1069.) And reversing on this ground would encourage defendants to avoid convictions by rendering their victim unconscious, as Webb did here. Finally, *Karsai*, a case in which the evidence was sufficient to support penetration, provides no guidance as to the sort of evidence that is insufficient to support such a jury finding.

For the foregoing reasons, we reject Webb's sufficiency of the evidence challenge.

6

## DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

McINTYRE, J.