Filed 7/31/14  P. v. Medina CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039625 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1105451) |
| v. | |
| LUIS ALBERTO MEDINA, | |
| Defendant and Appellant. | |

## I.     INTRODUCTION

Defendant Luis Alberto Medina appeals after a jury convicted him of committing sexual penetration of a child aged 10 or younger (count 1; Pen. Code, § 288.7, subd. (b)[1]), forcible lewd acts on a child under the age of 14 (count 2; § 288, subd. (b)(1)), and lewd acts on a child under the age of 14 (count 3; § 288, subd. (a)).  Defendant was sentenced to a prison term of 15 years to life for count 1, consecutive to three-year term for count 3, with the term for count 2 stayed pursuant to section 654.

On appeal, defendant contends the trial court made three erroneous evidentiary rulings:  (1) allowing the victim to offer an opinion as to defendant's guilt or innocence and as to his credibility; (2) allowing the prosecutor to recall the victim to provide further testimony about penetration; and (3) allowing the prosecutor to use a hot dog bun as a

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

demonstrative exhibit during the victim's testimony on recall. Defendant also contends trial counsel was ineffective for failing to object to the prosecutor's use of the hot dog bun as a demonstrative exhibit. We will affirm the judgment.

## II. BACKGROUND

Karrie Doe is the daughter of Wendy H., who is also the mother of two younger children. At the time of the two incidents leading to the charges against defendant, Karrie was 10 years old; she was 12 years old at the time of trial. Wendy and her children lived with three other people, including a young woman named Itzl M.

Defendant was the live-in boyfriend of Wendy's sister, Lorena H. Lorena had a son, M.E., who was about seven years old at the time of the two incidents leading to the charges. Defendant, Lorena, and M.E. lived together in a one-bedroom unit. In the bedroom, there was a big bed and a small bed.

The incidents leading to the charged offenses both occurred at defendant's and Lorena's home, on February 28, 2011 and in early March of 2011.

### A. *Karrie's Initial Disclosures*

On March 11, 2011, Itzl noticed that Karrie seemed sad when she came home from school. Karrie told Itzl that defendant had abused her. Itzl, who had been abused herself as a child, said that Karrie had to tell her mother, Wendy, about the abuse. In either their initial conversation or during a second conversation a few days later, Karrie told Itzl that defendant had grabbed her buttocks, grabbed her vagina, and put her hand on his penis. Karrie also said that defendant wanted to put his penis inside her.

That evening, Lorena offered to care for Wendy's children at Lorena and defendant's home. Itzl then called Wendy aside and told her that defendant had been touching Karrie. Karrie was present; she began crying and told Wendy that defendant had touched her vagina the prior weekend. Karrie specified that defendant's hand had gone underneath her pajamas or that defendant had lowered her pajamas. Defendant told

2

her that if she did not say anything, he would buy her a Nintendo video game player and take her to Chuck E. Cheese. Karrie also told Wendy that defendant had touched her buttocks when she was on a computer in Lorena and defendant's bedroom on Lorena's birthday.

Wendy told Lorena about Karrie's disclosure. Lorena then confronted defendant, who claimed the touching had occurred by accident.

### B.  Karrie's Statements to Police

Karrie was interviewed by the police shortly after her initial disclosures. A videotape of the interview was played for the jury at trial.

Karrie first told the police about the incident in which defendant touched her vagina. Karrie had been lying down in the big bed when defendant came and lay down next to her. Her sister and M.E. were in the small bed playing video games. Her sister and M.E. could not see her from where they were sitting.

When defendant started touching her, Karrie asked what he was doing. Defendant said, "I'm just playing with you" and touched her more. Defendant touched her vagina and buttocks. Defendant's hand went inside her underwear, and one finger went "[a] little" inside her vagina. Defendant "poked" her vagina with his fingernail. The inside of her vagina hurt for three days afterwards. Karrie reiterated that defendant's finger went inside of her vagina.

Defendant then turned her around, "stuck his penis out," and tried to put his penis into Karrie's vagina. He rubbed it on her vagina and then on her thigh. Karrie felt something "watery" come out of defendant's penis, and she later saw some "pinkish-whitish" stuff. Defendant stopped rubbing his penis on Karrie when she began crying. Defendant again said that he was "just playing." Defendant told her he would take her to Chuck E. Cheese " 'if you don't say nothing.' " Defendant also said he would buy her a Nintendo if she " 'stay[ed] quiet.' " He also promised to take Karrie and the other children to Bounce-A-Rama.

3

Karrie also told the police about a prior incident, which had occurred on Lorena's birthday. Defendant had touched her buttocks, underneath her shorts and underneath her underwear, for 40 seconds to one minute.

### C.    Sexual Assault Response Team Examination

Following her interview with the police, Karrie was examined by Mary Ritter, a physician's assistant and the primary examiner at the Center for Child Protection and Department of Pediatrics at Valley Medical Center.

Karrie complained that after the touching, her vagina hurt and itched when she urinated. Ritter found no evidence of a penetrating injury, but she explained that when an examination is conducted more than 72 hours after an incident, it is typical for any bruises to have healed and for no DNA to be found. Ritter did notice a brown mark inside Karrie's labia, which could have been either a mole or a resolving bruise. She had Karrie return for follow-up examinations and determined that the mark was a mole.

### D.    Karrie's Trial Testimony

At trial, Karrie first described the incident in which defendant touched her buttocks. The incident occurred on February 28, 2011, which was Lorena's birthday. Karrie and M.E. were playing on a computer in the bedroom at defendant and Lorena's home. Defendant came up behind Karrie and touched her buttocks, over her clothes.

Karrie also described the second incident, during which defendant touched her vagina. The incident occurred in the morning, after Karrie had spent the night at defendant's home. She was lying down in the big bed, and her sister and M.E. were playing video games on the small bed. Defendant came into the bedroom and lay down on the big bed next to Karrie. Defendant pulled Karrie's pajama bottoms down halfway, touched Karrie's leg, then touched her vagina. Defendant put his hand under Karrie's underwear. She felt defendant's fingernail poke her, outside her vagina. She did not feel defendant's finger go inside her vagina. She tried to push defendant's hand away. At some point, Karrie felt something "weird" and "squishy" on her leg. She got up and went

4

to the bathroom, where she checked herself for bleeding and saw "gooey stuff" on her leg.

Karrie testified that defendant did not tell her not to tell anyone about what had happened, but defendant did say he would take her to Chuck E. Cheese or Bounce-A-Rama and that he would buy her a Nintendo.

On redirect examination by the prosecutor, Karrie acknowledged telling the police that defendant had put a finger "a little bit" inside her vagina, but she no longer remembered if that was true. On recross examination by the defense, Karrie was asked if defendant put his finger in her vagina; Karrie responded, "[T]hat didn't happen."

Recalled by the prosecution the next day, Karrie acknowledged speaking with the prosecutor on the phone the night before. The prosecutor had been concerned about the clarity of her questions. Karrie confirmed that she knew where a tampon goes and indicated the spot on a diagram. Then, shown a hot dog bun, Karrie made a mark on the inside of the bun to indicate where she felt defendant's fingernail. When she told Detective Smith that defendant put his finger in her vagina "a little," she meant "partly on the inside," and not in the area where a tampon goes.

### E.    Defendant's Statement to Police

At trial, the defense played a videotape of defendant's interview with police. The prosecution also presented evidence of that interview through the testimony of the two officers who participated.

Defendant claimed that "nothing" happened the night of Lorena's birthday (i.e., when, according to Karrie, defendant touched her buttocks).

Defendant acknowledged that Karrie and her sister had stayed overnight at his home around March 6, 2011. Defendant admitted that he had got into bed next to Karrie the next morning. He noticed she did not have a Nintendo and said he would buy her one for her birthday. Thinking Karrie seemed sad or bored, defendant also said he would take her to Chuck E. Cheese. Defendant then started tickling Karrie in the lower stomach

5

area.  Karrie pushed his hand down, causing him to accidentally touch her vagina outside of her clothing.  Defendant admitted that his fingernails were longer that day.

The police told defendant they knew that he put his finger inside Karrie's vagina and that Karrie needed to know why he did it.  The police also told defendant that Karrie had a cut on her vagina and that defendant's DNA was found in the cut.  They told defendant they knew he had also grabbed Karrie's hand and tried to put it on his penis.  Defendant denied touching the inside of Karrie's vagina and denied grabbing her hand.

### F.     Charges, Verdicts, and Sentencing

Defendant was charged with committing sexual penetration of a child aged 10 or younger (count 1; § 288.7, subd. (b)), forcible lewd acts on a child under the age of 14 (count 2; § 288, subd. (b)(1)), and lewd acts on a child under the age of 14 (count 3; § 288, subd. (a)).  Counts 1 and 2 were based on the early March 2011 incident, during which defendant touched Karrie's vagina, and count 3 was based on the February 28, 2011 incident, during which defendant touched Karrie's buttocks.

The jury convicted defendant of all three counts.  At sentencing, the trial court imposed the low term of three years for count 3 and a consecutive indeterminate term of 15 years to life for count 1.  The court imposed the eight-year midterm for count 2 but stayed that term pursuant to section 654.

### III.    DISCUSSION

### A.    Opinion Testimony

Defendant contends the trial court erred by allowing Karrie to offer an opinion as to whether defendant was telling the truth when he denied committing the charged offenses.

#### 1.     Proceedings Below

During further redirect examination of Karrie, the prosecutor asked, "Karrie, if someone described this incident in the bed and said that [defendant] was just tickling you,

6

was just playing with you and his touching your vagina was just an accident, would that be the truth or would that be a lie?" Trial counsel objected, "That's an improper question."

The trial court ordered a sidebar. At the sidebar, defendant asserted, "The question is asking one witness to express an opinion about the credibility of another witness." The prosecutor responded, "Her credibility has been questioned." The trial court overruled defendant's objection, stating, "I think she's allowed to ask that."

The prosecutor then repeated her question, asking, "Ka[rrie], if somebody said that [defendant] came into the bed and he was just tickling your stomach and playing, playing with you and it was just an accident that he touched your vagina over the clothes, would that be the truth or would that be a lie?" Karrie responded, "That would be a lie."

### 2. Analysis

As defendant notes, a witness generally may not give an opinion as to a defendant's guilt or innocence (see *People v. Torres* (1995) 33 Cal.App.4th 37, 46) nor give an opinion about "the veracity of another person's particular statements" (*People v. Zambrano* (2004) 124 Cal.App.4th 228, 239). However, " 'were they lying' questions" must be examined "in context." (*People v. Chatman* (2006) 38 Cal.4th 344, 384 (*Chatman*).) Someone who is "a percipient witness to the events at issue has personal knowledge whether other witnesses who describe those events are testifying truthfully and accurately. As a result, he [or she] might also be able to provide insight on whether witnesses whose testimony differs from his [or her] own are intentionally lying or are merely mistaken." (*Id.* at p. 382.) Consequently, "were they lying" questions "should not be permitted when argumentative, or when designed to elicit testimony that is irrelevant or speculative. However, in its discretion, a court may permit such questions if the witness to whom they are addressed has personal knowledge that allows him [or her] to provide competent testimony that may legitimately assist the trier of fact in resolving credibility questions." (*Id.* at p. 384.)

7

In this case, Karrie was "a percipient witness to the events at issue" and had personal knowledge whether any statements about those events were truthful and accurate. (*Chatman, supra,* 38 Cal.4th at p. 382.) By asking Karrie whether it would be true if someone said that defendant touched her accidentally, the prosecutor was not eliciting testimony that was irrelevant or speculative, because Karrie was competent to give an opinion on whether the touching was intentional or accidental. Moreover, the prosecutor did not ask Karrie specifically whether defendant was lying, only whether "someone" who said that the touching occurred accidentally would be lying. Nothing in the record indicates Karrie knew that defendant had claimed the touching was an accident. Thus, the prosecutor did not actually elicit an opinion about defendant's credibility. Under the circumstances here, the trial court could reasonably determine that Karrie's response would "legitimately assist the trier of fact" and that her testimony did not constitute improper opinion about credibility, guilt, or innocence. (*Id.* at p. 384.) The trial court did not abuse its discretion by permitting Karrie to give the challenged testimony.

### B. Recall of Victim

Defendant contends the trial court erred by allowing the prosecutor to recall Karrie to provide further testimony about penetration.

Before addressing this claim, we briefly review the applicable law regarding sexual penetration of a child age 10 year or younger. Section 288.7, subdivision (b) provides: "Any person 18 years of age or older who engages in oral copulation or sexual penetration, as defined in Section 289, with a child who is 10 years of age or younger is guilty of a felony and shall be punished by imprisonment in the state prison for a term of 15 years to life." Section 289, subdivision (k)(1) provides: " 'Sexual penetration' is the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any

8

foreign object, substance, instrument, or device, or by any unknown object." The penetration may be of the labia majora and not the vagina. (See *People v. Quintana* (2001) 89 Cal.App.4th 1362, 1367 (*Quintana*).)

### 1.     Proceedings Below

Karrie was the last witness to testify on February 11, 2013. On that day, Karrie testified that she felt defendant's fingernail poke her, outside her vagina, and she denied that defendant's finger went inside her vagina. Karrie also acknowledged telling the police that defendant's finger had been inside her vagina and that the inside of her vagina hurt because defendant's fingernail had poked her. Following Karrie's testimony, the trial court informed her that she was "subject to recall."

When trial resumed on February 13, 2013, the prosecutor asked to recall Karrie. The prosecutor explained, "Yesterday, thinking about Ka[rrie's] testimony, I felt like I had not asked a very clear question of her. So the People are seeking to recall her to clear up this one issue of what 'inside' means to her." The prosecutor explained she had talked to Karrie following her testimony and had recorded the conversation, then forwarded the recording to trial counsel.

Trial counsel noted that pursuant to Evidence Code sections 774 and 778, a witness may not be recalled and "reexamined as to the same matter without leave of court." Trial counsel asked the court "not to grant leave to reopen." He argued: "Essentially, the People are asking for a do-over." Trial counsel noted that the prosecutor had conducted redirect examination of Karrie as to the penetration issue. Trial counsel suggested that the prosecutor had provided Karrie with "additional information" ("essentially an anatomy lesson") following her testimony.

The prosecutor responded that it would be "soundly within the discretion of the court" to allow Karrie's recall. The prosecutor argued, "A trial is a search for the truth. And the jury has an absolute right to hear all of the evidence in the clearest fashion possible. I did not present my question to Ka[rrie] very clearly. And upon reflection of

how I asked that question and how she's been asked it in the past, we haven't given this witness a fair opportunity to explain to a jury what she means or what she was talking about."

The prosecutor acknowledged that during the conversation she had with Karrie after Karrie's testimony, she had explained to Karrie the difference between the vaginal cavity and the labia majora. The prosecutor had asked Karrie whether defendant's hand went " 'where a Tampon goes,' " and Karrie had said, " 'no.' " The prosecutor had then asked if defendant's hand had gone " 'where the lips are,' " and Karrie had said " 'yes, a little.' "

Trial counsel asserted that the prosecutor had asked Karrie leading questions that suggested the prosecutor wanted Karrie to say that defendant's finger went "in between the lips."

The trial court noted that the decision whether to allow Karrie's recall was a matter within its discretion. The court found it was "important that all of the facts come out, that the jury be given all of the facts so they can make a decision." The court then ruled that Karrie could be recalled, that the prosecutor could only be asked "direct questions" by the prosecutor, and that the defense would have "great latitude" to cross-examine Karrie about her conversation with the prosecutor.

As noted above, upon recall, Karrie made a mark on the inside of a hot dog bun to indicate where she felt defendant's fingernail, and she explained that when she told Detective Smith that defendant put his finger in her vagina "a little," she meant "partly on the inside," and not in the area where a tampon goes.

### 2. Analysis

"After a witness has been excused from giving further testimony in the action, he [or she] cannot be recalled without leave of the court. Leave may be granted or withheld in the court's discretion." (Evid. Code, § 778.) "A witness once examined cannot be reexamined as to the same matter without leave of the court, but he [or she] may be

10

reexamined as to any new matter upon which he [or she] has been examined by another party to the action.  Leave may be granted or withheld in the court's discretion."  (Evid. Code, § 774.)

A trial court may permit a witness to be recalled when recall would clarify inconsistencies in the witness's testimony.  (*People v. Thomas* (1992) 2 Cal.4th 489, 542.)  On the other hand, a trial court may refuse to allow recall of a witness if further examination "would necessarily be cumulative and repetitious of matters already inquired into."  (*People v. Flynn* (1958) 166 Cal.App.2d 501, 512.)

Here, permitting Karrie to be recalled was not "arbitrary or capricious" and did not " ' " 'exceed[] the bounds of reason' " ' " under the circumstances.  (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.)  Recalling Karrie to testify about her understanding of female genitalia would help clarify inconsistencies in her testimony, since she testified that defendant's finger did not go inside her vagina but that she had previously told police defendant's finger went inside her vagina.  Although the parties had asked Karrie whether defendant's finger had penetrated her vagina, they had not asked whether defendant's finger had penetrated her "genital . . . opening."  (§ 289, subd. (k)(1); see *Quintana, supra,* 89 Cal.App.4th at p. 1367 ["a 'genital' opening is not synonymous with a 'vaginal' opening"]; *People v. Karsai* (1982) 131 Cal.App.3d 224, 233 (*Karsai*) [victim testified that defendant's penis went between her " 'lips' " but not "inside her vagina"], disapproved on other grounds by *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8.)  Recalling Karrie to be questioned about her understanding of the difference between the labia and the vaginal cavity, and about whether defendant's finger had penetrated the labia but not the vaginal cavity, was not cumulative to her prior testimony.  Under the circumstances, we find no abuse of discretion.

### C.     Use of Demonstrative Exhibit

Defendant contends the trial court erred by allowing the prosecutor to use a hot dog bun as a demonstrative exhibit during Karrie's testimony on recall.[2]

### 1.     Forfeiture/Ineffective Assistance

As defendant acknowledges, trial counsel did not object when the prosecutor used the hot dog bun during Karrie's testimony, and thus the issue is forfeited.  (See *People v. Partida* (2005) 37 Cal.4th 428, 434.)  Defendant seeks to avoid the consequences of forfeiture by asserting that trial counsel was ineffective for failing to object.

"To prevail on a claim of ineffective assistance of counsel, the defendant must show counsel's performance fell below a standard of reasonable competence, and that prejudice resulted.  [Citations.]  When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation.  [Citation.]  Even where deficient performance appears, the conviction must be upheld unless the defendant demonstrates prejudice, i.e., that ' " 'but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " ' [Citations.]"  (*People v. Anderson* (2001) 25 Cal.4th 543, 569 (*Anderson*); see also *Strickland v. Washington* (1984) 466 U.S. 668, 687-688 (*Strickland*).)

We will assume that reasonable trial counsel would have objected to the use of the hot dog, and we turn to the question of whether defendant has demonstrated prejudice—that is, whether it was reasonably probable that an objection would have been successful.

---

[2] We have reviewed photographs of the hot dog bun.  We note that the defense subsequently used the hot dog bun during Mary Ritter's cross-examination; Ritter made a blue mark on the hot dog bun at the approximate site of the mole she noticed inside Karrie's labia.

(See *Anderson, supra,* 25 Cal.4th at pp. 569, 587; *Strickland, supra,* 466 U.S. at pp. 687-688.)

### 2.    *Analysis*

"It is entirely proper for a prosecutor to use objects similar to those connected with the commission of a crime for purposes of illustration. [Citations.]" (*People v. Barnett* (1998) 17 Cal.4th 1044, 1135.) "To be admissible, demonstrative evidence must satisfy two requirements: first[,] the evidence must be a reasonable representation of that which it is alleged to portray; and second, the evidence must assist the jurors in their determination of the facts of the case, rather than serve to mislead them. [Citations.]" (*People v. Rivera* (2011) 201 Cal.App.4th 353, 363.) A trial court's decision to permit the use of demonstrative evidence is reviewed for abuse of discretion. (*Id.* at p. 362.)

Defendant contends that the hot dog bun "in no way resembled a vagina, or vaginal lips specifically, either in size, shape, color, material, etc." He also contends the hot dog bun was "not used to illustrate Karrie's testimony, but rather to create testimony by her that she had been touched inside her vaginal lips . . . ." (Underscoring omitted.) We disagree. Although the hot dog bun did not constitute an anatomically correct model of the female genitalia, the hot dog bun was a reasonable representation of the labia, which are often referred to as the "lips" of the vagina.[3] (See *Karsai, supra,* 131 Cal.App.3d at p. 233.) The hot dog bun enabled Karrie to distinguish between the outside and inside of her "genital . . . opening" (§ 289, subd. (k)(1)) and thus assisted the jurors in their determination of the facts of the case. The hot dog bun was not prejudicial or misleading. Under the circumstances, it was not reasonably probable that an objection to the hot dog bun would have been successful. (See *Anderson, supra,* 25 Cal.4th at pp. 569, 587; *Strickland, supra,* 466 U.S. at pp. 687-688.)

---

[3] Indeed, the defense later used the hot dog bun for this purpose. (See footnote 2, *ante*.)

## IV. DISPOSITION

The judgment is affirmed.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

MÁRQUEZ, J.

_____

GROVER, J.