Filed 12/1/14 (unmodified opn. attached)

CERTIFIED FOR PARTIAL PUBLICATION

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE, | ) | No. BR 050943 |
| Plaintiff and Respondent, | ) | Van Nuys Trial Court |
| v. | ) | No. 3PY00206 |
| VAHE ALEKSANYAN, | ) | |
| Defendant and Appellant. | ) | **ORDER** |

Respondent's petition for rehearing is denied.

The partially published opinion filed November 5, 2014, is modified as follows:

Page 14, line 21, through page 15, line 19, of the opinion is deleted.  This portion of the opinion is replaced with the following:

We agree with defendant the vagueness and right to travel contentions are not forfeited by failure to object in the trial court because they involve pure questions of law, undisputed facts, and facial constitutional challenges.  (See *In re Sheena K.* (2007) 40 Cal.4th 875, 889; *Hale v. Morgan* (1978) 22 Cal.3d 388, 394.)  We decide constitutional issues de novo (*Vo v. City of Garden Grove* (2004) 115 Cal.App.4th 425, 433).  The contention that the court abused its discretion under *Lent* by imposing unreasonable conditions of probation is forfeited because defendant's attorney did not object to the conditions in the trial court.  (*People v. Welch* (1993) 5 Cal.4th 228, 237; *People v.*

1

*Rodriguez* (2013) 222 Cal.App.4th 578, 585.)  We analyze the constitutionality of each of the conditions in turn.

*Sexual activity in public*

The court barred defendant as a condition of probation from engaging or offering to engage in sexual activity in a public place, or a place open to the public, or exposed to public view.

Page 17, lines 19 through 21, are deleted.  This portion of the opinion is replaced with the following:

The court barred defendant as a condition of probation from renting, registering, occupying, or being present in any motel or hotel room "unless it is his actual residence" and it is registered or rented by him in his name.

Page 18, lines 6-17, are deleted.

Page 18, line 20, delete the citation to *White*, *supra*, 97 Cal.App.3d at page 148, and replace it with *People v. White* (1979) 97 Cal.App.3d 141, 148.

This modification does not change the judgment.

_____
Ricciardulli, J.


_____
Kumar, Acting P. J.


_____
B. Johnson, J.

Filed 11/5/14 (unmodified version)

**CERTIFIED FOR PARTIAL PUBLICATION***

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE, | ) | No. BR 050943 |
| | ) | |
| Plaintiff and Respondent, | ) | (Van Nuys Trial Court |
| | ) | No. 3PY00206) |
| v. | ) | |
| | ) | |
| VAHE ALEKSANYAN, | ) | |
| | ) | |
| Defendant and Appellant. | ) | **OPINION** |
| | ) | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Van Nuys Trial Court, Shellie Samuels, Judge. Affirmed.

Fay Arfa for Defendant and Appellant.

Michael N. Feuer, Los Angeles City Attorney, Debbie Lew, Assistant City Attorney, and Kent J. Bullard, Deputy City Attorney, for Plaintiff and Respondent.

\*          \*          \*

_____
*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and III.A-F.

## I. *INTRODUCTION*

Defendant Vahe Aleksanyan solicited a police officer posing as a street-walking prostitute to engage in a sexual act in exchange for money, and was arrested while walking with her toward her motel room. He appeals the judgment of conviction following a jury trial of soliciting another person to engage in an act of prostitution (Pen. Code, § 647, subd. (b)).

Defendant contends the judgment should be reversed because (1) there was insufficient evidence to support the conviction; (2) the court erred in failing to instruct the jury with CALCRIM No. 358; (3) the court incorrectly answered a jury question; (4) the prosecutor committed misconduct during closing argument; (5) irrelevant and inflammatory testimony was erroneously admitted at trial; (6) the combination of errors rendered his trial fundamentally unfair; and (7) two of his probation conditions were invalid and should be stricken. As discussed below, we reject each of the contentions, and affirm the judgment in its entirety.

## II. *FACTS*

[Not Certified for Publication]

At trial, Los Angeles Police Officer Tara Munjekovich testified that on January 10, 2013, she was working undercover posing as a street-walking prostitute. She wore a tank top, a jacket, shorts, leggings, and boots, and walked back and forth from one corner of Sepulveda Boulevard and Haynes Street to the other. At approximately 8:55 p.m., as Munjekovich stood at the northwest corner in front of a motel, defendant drove his car south on Sepulveda, slowed, and made eye contact with her. Defendant turned right on Haynes heading west, then right again going north on a frontage road parallel to Sepulveda. He stopped in the middle of the road, about 10 feet north of the intersection and five or six feet from where Munjekovich was standing. Defendant rolled down his driver's window, and Munjekovich walked up to the car.

Munjekovich said "Hi," and defendant said "Hi" and asked if she was a "cop." Munjekovich told him she was not, and defendant asked if she had "a place." Munjekovich responded she had a room "right here," pointing to the motel. Defendant asked if she wanted to get in his car; she told him again her room was "right there"; and he said, "Well, let's talk out

2

of the street." Munjekovich directed defendant to park in the motel parking lot, and he drove into the lot, got out of his car, and waited for her by the trunk of his car.

Munjekovich walked up to defendant, asked him "what are you looking for," and he asked, "What are you good at." She told him she was good at "everything," and he told her he was "looking for everything." Munjekovich responded, "We can do everything. However, I don't do anal," referring to anal intercourse. Defendant said "No?" and she said, "No, I'll fuck you and I'll blow you . . . . But I don't do that." Defendant said, "Okay, how about a facial," a street term for a man ejaculating onto someone's face. Munjekovich told him he could do that to her, and he asked, "How much?" She told him "for something like that it was going to be a little bit more," and they went back and forth a couple of times regarding how much money defendant had. He asked her to give him a price, and she responded, "For that, it's gonna [*sic*] be around $80." Defendant said, "Okay, $80. How long can I go for $80?" Munjekovich testified defendant explained "he may be really fast the first time and want to go again, so how long could he get for the 80." Munjekovich responded she would give him an hour, and defendant asked whether he "could record it on his phone." Munjekovich told him he could record, he said "Okay," she told him "Let's go into my room," and he said "Okay." Munjekovich and defendant then started walking toward a row of motel rooms; at that point, she gave a signal, and uniformed officers drove up and took defendant into custody.

Los Angeles Police Officer Eric Herrera testified defendant had $393.95 on his person and in his wallet when he was arrested. Los Angeles Police Officer Oswaldo Chavez testified he monitored an "overhear" audio listening device located in Munjekovich's purse and heard portions of her conversation with defendant.[1] He was unable to hear the entire conversation due to several factors, including electronic static, the location of the device, and the amount of

---

[1]Chavez wrote in his notes what he heard, and the notes were admitted into evidence. The notes were not transmitted to this court for our consideration. According to Chavez's testimony and defense counsel's description of the notes during closing argument, the notes narrated the following portions of the conversation between Munjekovich and defendant: "Officer: Hi. [¶] Officer: I have a room. [¶] Officer: What do you like? [¶] Officer: Do you want to go down? What do you want to do? [¶] Officer: how much you got? [¶] Defendant: I want everything. [¶] Officer: You want everything? [¶] Defendant: Yeah, but for how long?"

3

traffic noise in the area. Sergeant Ronnie Fisher of the Los Angeles Police Department testified regarding his role overseeing Munjekovich's undercover operation, the reasons the police had targeted the specific area, and how listening devices worked. Officer Matthew Clymer testified defendant was taken into custody approximately 15 feet away from the trunk of defendant's car, as defendant walked side-by-side with Munjekovich toward the motel rooms.

Officer Yusoff Thaimas was called as a witness by the defense, and he testified it took 15 to 30 seconds from the time defendant parked in the motel lot to when he was taken into custody. The defense also called as a witness defendant's sister, Heghush Aleksanyan, who testified defendant was an honest, trustworthy, and loyal person.

### III. *DISCUSSION*

A.    Sufficiency of Evidence[2] [Not Certified for Publication]

""'"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citation.]" (*People v. Aldana* (2012) 206 Cal.App.4th 1247, 1253.)

Defendant contends the evidence at trial was insufficient to prove he was guilty because Munjekovich was not a credible witness, and her version of the conversation was uncorroborated by any forensic, scientific, or empirical evidence. We reject the contention because it was the exclusive province of the jury to determine the credibility of witnesses (see *People v. Maury* (2003) 30 Cal.4th 342, 403), and an appellate court does not reweigh the evidence or reevaluate the witnesses' credibility (*People v. Scott* (2011) 52 Cal.4th 452, 487). Corroboration is only required if a specific statute so requires it (see, e.g., Pen. Code, § 1111 [accomplice testimony must be corroborated]), and none does so in the present case. The testimony of a single witness, if believed by the trier of fact, is sufficient to prove any facts

---

[2]Defendant raised many of the same issues addressed in the present opinion in his petition for a writ of habeas corpus, which was denied on today's date in case No. BX001315.

4

necessary for a conviction (see Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181).

Defendant further maintains Munjekovich's testimony was improbable because the conversation with defendant she narrated at trial must have lasted more than 15 to 30 seconds. Defendant states the actual conversation only lasted this long based on the 15- to 30-second time span testified to by Thaimas. But this span encompassed only the portion of the conversation between Munjekovich and defendant from when he parked his car in the lot to when he was taken into custody on his way to the motel room, and there was no indication based on Munjekovich's testimony that the conversation during that span lasted any longer. Defendant also maintains Munjekovich's testimony was contradicted by what Chavez heard on the overhear device. But, Chavez testified he heard only parts of the conversation due to static and other problems in hearing what was said. In any event, the time span involved and Chavez's testimony do not fatally undermine Munjekovich's testimony because "[w]eaknesses and inconsistencies in eyewitness testimony are matters solely for the jury to evaluate. [Citation.]" (*People v. Allen* (1985) 165 Cal.App.3d 616, 623.)

B.      CALCRIM No. 358 [Not Certified for Publication]

Defendant contends the court erred in failing to instruct the jury with CALCRIM No. 358 concerning the jury considering defendant's oral statements with caution. "The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law [citations] . . . ." (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

CALCRIM No. 358 provides: "You have heard evidence that the defendant made [an] oral or written statement[s] (before the trial/while the court was not in session). You must decide whether the defendant made any (such/of these) statement[s], in whole or in part. If you decide that the defendant made such [a] statement[s], consider the statement[s], along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the statement[s]. [¶] [Consider with caution any statement made by (the/a) defendant tending to show (his/her) guilt unless the statement was written or otherwise recorded.]"

The trial court refused to provide the instruction because it determined that under *People v. Zichko* (2004) 118 Cal.App.4th 1055 (*Zichko*), the instruction did not need to be provided since defendant committed the crime of soliciting another person to engage in an act of prostitution by making statements. *Zichko* held CALJIC No. 2.71, an instruction similar to CALCRIM No. 358, was not required in a criminal threats case. The Court of Appeal reasoned the instruction informing jurors to view a defendant's oral admissions with caution did not need "to be given when defendant's words constitute the crime itself." (*Zichko*, *supra*, 118 Cal.App.4th at p. 1057, fn. omitted.) As in *Zichko*, defendant's statements constituted the crime of which he was charged; through his statements to Munjekovich, he solicited her to engage in an act of prostitution. The court thus did not err in failing to provide the instruction.[3]

C.      <u>Answering Jury Question</u> [Not Certified for Publication]

While the jury was deliberating, it asked the court in writing, "Must the defendant bring up the subject of money in order [*sic*] for the crime of solicitation of a prostitute?" Defense counsel requested that the court reinstruct the jury with the instruction setting forth the elements of the crime. Instead, the court answered the question "No," and defendant contends on appeal this was error.

Penal Code section 1138 provides that when the jury desires "'to be informed on any point of law arising in the case, . . . the information required must be given.' The court has a primary duty to help the jury understand the legal principles it is asked to apply. [Citation.] . . . . the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.]" (*People v. Beardslee* (1991) 53 Cal.3d 68, 97.)

The court did not abuse its discretion in answering the jury's question. To be found guilty, defendant was required to have specifically intended to engage in an act of prostitution with Munjekovich (Pen. Code, § 647, subd. (b)), and thus the issue of whether defendant or

---

[3]The issue whether a court should instruct a jury to consider a defendant's extrajudicial, oral statements with caution when the statements constitute a criminal act is currently before the California Supreme Court in *People v. Diaz,* review granted November 20, 2012, S205145.

Munjekovich first brought up the subject of money was relevant to whether defendant had the requisite intent. But, fairly read, the jury only asked: "*Must* the defendant bring up the subject of money in order [to be found guilty of] the crime of solicitation of a prostitute?" (Emphasis added.) It appears the jury wanted to know whether it was *required* that it be proved defendant initiated the issue of money in order for defendant to be found guilty. The court's answer—"No"—correctly answered the question because a defendant *can* be convicted of the crime of solicitation of prostitution even if the defendant does not initiate the discussion of how much money would be paid for the sex act. "To establish that a defendant committed the crime of solicitation, the People must prove that (1) the defendant requested or solicited a person to engage in an act of prostitution and (2) the defendant intended to engage in an act of prostitution. [Citation.]" (*People v. Mecano* (2013) 214 Cal.App.4th 1061, 1069.) There is no requirement the defendant initiate the topic of money or consideration.

D.     Prosecutor Misconduct [Not Certified for Publication]

During closing argument, the prosecutor made the following argument concerning proof beyond a reasonable doubt: "The defendant is charged with soliciting an act of prostitution from another person. And before I get into the elements of that charge, I want to talk to you a little bit about reasonable doubt, what reasonable doubt is, and what reasonable doubt does not mean. [¶] Let's talk about what reasonable doubt is not. Proof beyond a reasonable doubt does not mean proof beyond all possible doubt, because everything in this world is open to some possible or imaginary doubt, and that would be an impossible standard. [¶] Proof beyond a reasonable doubt doesn't mean that you have to be absolutely 100 percent certain that the defendant is guilty. Why? Because in order for you to be 100 percent absolutely certain, you would have had to have been there. You would have actually had to have seen what the defendant did and heard exactly what happened. Because this crime entails intent, you would actually have to be able to read the defendant's mind to see what he actually was intending that night. Again, that is impossible. [¶] Proof beyond a reasonable doubt means proof that leaves you with an abiding conviction in the truth of the charges. Let's unpack that sentence. Abiding conviction, what is an abiding conviction? An abiding conviction is a long-lasting belief,

abiding, long-lasting conviction, belief. [¶] What does that mean? That means if you find the defendant guilty, a month from now, looking back at all the evidence in this case, you would still find him guilty; a year from now, looking back at all the evidence in this case, you would still find him guilty. That's what proof beyond a reasonable doubt means."

Defendant contends the prosecutor committed misconduct by improperly quantifying the beyond a reasonable doubt standard. Defendant forfeited this contention by failing to object in the trial court to the prosecutor's argument and by not requesting the court admonish the jury to disregard the prosecutor's comments. (See *People v. Fuiava* (2012) 53 Cal.4th 622, 679-680.)

Defendant further contends that his trial counsel was ineffective in failing to object to the prosecutor's closing argument, and the failure to object violated defendant's rights to a fair trial and due process of law. "To prevail on a claim of ineffective assistance of counsel, [a] defendant 'must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice.' [Citation.]" (*People v. Hart* (1999) 20 Cal.4th 546, 623.) "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*People v. Maury* (2003) 30 Cal.4th 342, 389, citing *Strickland v. Washington* (1984) 466 U.S. 668, 689.) A defendant has the burden of showing on appeal ineffective assistance of counsel. (*People v. Malone* (1988) 47 Cal.3d 1, 33.)

Prosecutorial misconduct violates the California Constitution only if it involves ""'"the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."' [Citations.]" (*People v. Espinoza* (1992) 3 Cal.4th 806, 820.) "'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process."'" (*People v. Gionis* (1995) 9 Cal.4th 1196, 1214-1215, citations omitted.) ""'"[A] prosecutor is given wide latitude during argument." [Citations.]' [Citation.]" (*People v. Williams* (1997) 16 Cal.4th 153, 221.)

Measured by these standards, the prosecutor's argument here fell short of constituting misconduct. The prosecutor explained to the jury that the prosecution bore the burden of proof,

8

but that the prosecution did not need to prove the case to a total certainty, or "100 percent," and the jury need not be "absolutely 100 percent certain." The jury was instructed with CALCRIM No. 220, which basically stated the same thing: "The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt." The prosecutor ended his discussion of the beyond a reasonable doubt standard with an explanation that the standard required the jury to find it had "an abiding conviction in the truth of the charges," an "abiding, long-lasting conviction, belief." This was also fully consistent with the portion of the pattern jury instruction provided to the jury which stated: "Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true." (See CALCRIM No. 220.) In sum, the prosecutor's argument did not "convey an impression of a lesser standard of proof than the constitutionally required standard of proof beyond a reasonable doubt." (*People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1268.)

E.      Admission of Evidence [Not Certified for Publication]

Defendant contends he was deprived of his right to due process and to a fair trial because his trial counsel was ineffective in failing to object to portions of the testimony of Munjekovich and Fisher. Defendant maintains Munjekovich rendered improper opinions regarding defendant's guilt and speculated about whether a crime was committed, and Fisher gave irrelevant and inflammatory testimony.

*Munjekovich*

Evidence Code section 801 provides in relevant part that "[i]f a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: [¶] (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact . . . ." Thus, "a witness cannot express an opinion concerning the guilt or innocence of the defendant. [Citations.]" (*People v. Torres* (1995) 33 Cal.App.4th 37, 46.) "[O]pinions on guilt or innocence are inadmissible because they are of no assistance to the trier of fact." (*Id.* at p. 47.) The same rationale that prohibits expert opinions on guilt "also prohibits the witness from expressing an opinion as to whether a crime has been

9

committed." (*Ibid.*) We review for abuse of discretion whether the trial court erred in admitting testimony. (See *People v. Prince* (2007) 40 Cal.4th 1179, 1223.)

Defendant identifies six instances where Munjekovich purportedly provided improper opinion testimony regarding whether defendant was guilty and whether a crime was committed:

(1)    On direct, Munjekovich testified she gave the arresting officers a signal that an offense had taken place, she was asked why she thought a violation had occurred at that point, and she testified, "We had agreed to a sexual act in exchange for money." This testimony was offered to explain why Munjekovich gave the signal at the time she did, not as an expert opinion whether defendant had actually committed a crime. Thus, the court did not abuse its discretion in admitting the testimony, and defendant failed to show his counsel's performance in not objecting to the testimony fell below the standards of reasonable professional assistance. (See *People v. Lewis* (2001) 26 Cal.4th 334, 359 ["Where 'there was no sound legal basis for objection, counsel's failure to object to the admission of the evidence cannot establish ineffective assistance'"].)

(2)    Defense counsel on cross-examination asked Munjekovich whether the crime she had testified about consisted only of words, and she testified, "That is partially what the crime is, yes, it's an agreement of the exchange of some type of sexual activity for compensation. That is the definition of the crime." This testimony was not offered as an expert opinion; defense counsel apparently solicited the testimony as a tactical choice because it bolstered the claim there was a reasonable doubt concerning defendant's guilt since the case depended solely on Munjekovich's faulty interpretation of defendant's words. Because "the record does not preclude a satisfactory explanation for counsel's actions, we will not, on appeal, find that trial counsel acted deficiently. [Citation.]" (*People v. Stewart* (2004) 33 Cal.4th 425, 459.)

(3)    On redirect, Munjekovich testified that, if defendant had driven away after the conversation on the frontage road by Sepulveda, he would not have been arrested because she had not yet had the conversation regarding exchanging sex for compensation. She was then asked by the prosecutor whether, when the conversation in the motel parking lot turned to the topic of money for sex, if defendant had said there was a mistake and he did not want to pay for

10

sex, would he have been arrested, and Munjekovich responded, "No." The testimony was not admissible as an expert opinion regarding whether a crime occurred. But, it was properly admitted to rebut defense counsel's argument, as reflected by counsel's cross-examination and statements to the jury during his opening remarks, that defendant was arrested by mistake for simply flirting with the officer, and that when he realized Munjekovich was talking about money for sex, he terminated the conversation.

(4)     Also on redirect, Munjekovich was asked what was the key part of the conversation that led her to believe defendant was soliciting her to engage in an act of prostitution. She responded, "It was the totality of the conversation as a whole: the discussion of the sexual acts he was interested in, the amount of money that was discussed, the further discussion about how long he could engage with me for that amount of money, the fact that he wanted to record it, all of the components of our conversation." This testimony was admissible to rebut the defense argument that defendant was arrested precipitously, based only on preliminary discussions about sex without agreeing to exchange money for sex.

(5)     On direct, Munjekovich was asked why men were not arrested in other undercover operations where she had posed as a prostitute and men approached and just talked to her. She answered, "If we don't engage in a conversation where there is that exchange of some type of sexual act for money or other compensation, then there is no arrest." This testimony was admissible to show the officer had not already made up her mind there was going to be an arrest based only on the preliminary sexual banter with defendant, and then proceeded to misinterpret all of the defendant's subsequent actions to support the belief. The testimony also rebutted the defense argument that defendant was arrested precipitously.

(6)     On direct, Munjekovich was asked a series of questions about whether innocuous behavior like men telling her she was really cute, or asking her, "Hey, you want to get some?" or conversing without any discussion of compensation, would result in an arrest, and she answered, "No." She was then asked by the prosecutor, "And based on your experience, knowledge and training, did the defendant solicit you that night for sex?" and she responded, "Yes." The prosecutor asked, "Did he solicit you for an act of prostitution?" and she again

11

responded, "Yes." The first part of this sequence of questions was admissible to rebut the defense that defendant had engaged in only flirtatious innocuous conversation with Munjekovich. However, the latter two answers constituted inadmissible opinion testimony on defendant's guilt. (See *People v. Torres*, *supra*, 33 Cal.App.4th at p. 47.)

The erroneous admission of evidence does not warrant reversing the judgment because of the lack of prejudice. "Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. [Citation.]" (*People v. Benavides* (2005) 35 Cal.4th 69, 93.) Even if Munjekovich's opinion on defendant's guilt had been excluded, there is no reasonable probability of a different outcome. The prosecution did not argue that the jury should find defendant guilty because of the opinion. Moreover, Munjekovich's version of her conversation with defendant was corroborated by the fact that defendant parked his car in a motel parking lot, Chavez overheard defendant say he wanted "everything," defendant was arrested 15 feet away from his car while walking side-by-side with Munjekovich toward motel rooms, and he had in his possession $393.95 in cash, a sufficient sum to pay for a sexual encounter with a prostitute.

*Fisher*

After testifying he oversaw Munjekovich's undercover operation, Fisher testified that the reason the officers conduct the operations was because of the problem with prostitution in the area and to protect the interests of residents and businesses in the area. As part of this testimony, the prosecutor asked Fisher how street-walking prostitution affects the residents and businesses, and Fisher responded, "Well, it has a negative impact on the quality of life. One of the things that will happen is that the street-walking prostitutes will connect with a potential customer, 'a john' as they're referred to, and then they'll subsequently frequently go back into the adjacent neighborhoods to carry out their agreed sex act, and in the process will leave behind debris, used condoms, things of that nature. So when the citizens come out of their residence, that's what they encounter, and they are very upset about that. [¶] We also have situations where the pimps of the street-walking prostitutes will or can engage in robberies of the johns when they're over on these dark side streets, things of that nature."

We determine defendant has not shown his trial counsel was ineffective in failing to object to this portion of the testimony. In light of counsel's closing argument to the jury, the record does not preclude a satisfactory explanation for counsel's failure to object on relevance or any other grounds. (See *People v. Stewart*, *supra*, 33 Cal.4th at p. 459.) Defense counsel cross-examined Fisher extensively regarding his claim that the undercover operation he headed in the vicinity of the motel was undertaken to protect the community's interests. Counsel apparently tried to show through the line of questions that the officers violated the rights of the motel owners by posting undercover officers posing as prostitutes on their property despite "no trespassing" signs.

In addition to arguing that defendant's words were misconstrued by Munjekovich, counsel also contended in closing argument that the prosecution witnesses embellished their testimony and failed to respect defendant's rights by falsely arresting him. Counsel pointed specifically to Fisher's testimony about staging the undercover operation because prostitution "is such a bad thing for the community, and we're out here for the small business people," and then argued the police "did not ask the permission of the motel owner to run their operation in there. There are 'no trespassing' signs posted clearly. . . . Those officers, when they set up their operation in there, they were committing a crime. They were trespassing, no way around it. [¶] Why is that important? Because that's the way they run their operations. Do you think that an organization that's willing to just say, we know what's best, we're going to set up shop in this little motel's parking lot and not even ask them, do you think they would have any respect for the rights of my client? Do you think they would fudge things a little bit?"

The record reflects counsel's failure to object to Fisher's testimony about the impact of prostitution on the community and the police officers' interest in abating it may have been due to a tactical reason: it allowed counsel to argue the officers did not really have the community's best interests or rights in mind, the police were willing to commit a crime to arrest persons, and if they were willing to do this, they might also be willing to unjustly arrest defendant. "[T]he means of providing effective assistance are many and . . . as a consequence counsel has wide discretion in choosing which to use." (*People v. Ledesma* (1987) 43 Cal.3d 171, 216.) We

13

"'defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."'  [Citations.]"  (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.)

F.      Combination of Errors [Not Certified for Publication]

Defendant contends the cumulative effect of the trial court's errors deprived defendant of due process and the right to a fair trial.  We have found only one error concerning the improper admission of Munjekovich's opinion regarding defendant's guilt, and determined the error to have been nonprejudicial.  Having found no prejudicial errors to accumulate, we reject defendant's contention.  (See *People v. Chatman* (2006) 38 Cal.4th 344, 410.)

[The balance of the opinion is to be published.]

G.      Probation Conditions

The trial court suspended imposition of sentence, and placed defendant on probation for 36 months on various conditions.  Defendant contends the following two conditions were invalid: "Do not engage or offer to engage in sexual activity in a public place or a place open to the public or exposed to public view.  [¶]  Do not rent, register, occupy, or be present in any motel or hotel room unless it is your actual residence and registered or rented to you in your true name."  Defendant contends the conditions are unreasonable under *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*), the former condition is unconstitutionally vague, and the latter violates his constitutional right to travel.

We agree with defendant the contentions are not forfeited by failure to object in the trial court because they involve pure questions of law, undisputed facts, and facial constitutional challenges.  (See *In re Sheena K.* (2007) 40 Cal.4th 875, 889; *Hale v. Morgan* (1978) 22 Cal.3d 388, 394.)  We review the court's imposition of probation conditions for abuse of discretion (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121), and decide constitutional issues de novo (*Vo v. City of Garden Grove* (2004) 115 Cal.App.4th 425, 433).

"A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal,

14

and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]" (*Lent, supra*, 15 Cal.3d at p. 486, fn. omitted; accord, *People v. Anderson* (2010) 50 Cal.4th 19, 32.) "The test is clearly in the conjunctive, that is, the three factors must all be found to be present in order to invalidate a condition of probation." (*People v. Balestra* (1999) 76 Cal.App.4th 57, 65, fn. 3; see *Lent, supra*, 15 Cal.3d at p. 486, fn. 1.)

In addition to being reasonable, a probation condition must also be constitutional. Regarding each of the conditions at hand, "the matter of reasonableness is intertwined with constitutional issues." (*In re White* (1979) 97 Cal.App.3d 141, 148 (*White*).) We analyze the validity and constitutionality of each of the conditions in turn.

*Sexual activity in public*

With respect to the condition of probation barring defendant from engaging or offering to engage in sexual activity in a public place, or a place open to the public, or exposed to public view, no abuse of discretion was shown under *Lent*. The condition related to conduct which in itself need not necessarily be criminal, because offering to engage in sexual activity in a public place does not amount to a solicitation to engage in prostitution. (See Pen. Code, § 647, subd. (b).) But, the condition was related to the current crime for which defendant was convicted, which involved soliciting a person in public to engage in an act of prostitution. Also, by barring defendant from engaging in similar behavior, it was reasonably related to future criminality. (See *Lent, supra*, 15 Cal.3d at p. 486.)

Regarding the constitutionality of the condition, "[a] probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness. [Citation.]" (*In re Sheena K., supra*, 40 Cal.4th at p. 890.) The "underpinning of a vagueness challenge is the due process concept of 'fair warning.' [Citation.] The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation] . . . ." (*Ibid.*)

Defendant maintains the condition was vague because the term "sexual activity" can be broadly defined to encompass, according to a Wikipedia entry cited by defendant, a wide variety of behavior, such as conduct intended to arouse the sexual interest of another, like holding hands and kissing in public. We do not consider Wikipedia to be a sufficiently reliable source of authority. (See *In re Marriage of LaMoure* (2011) 198 Cal.App.4th 807, 826; see also *Crispin v. Christian Audigier, Inc.* (C.D.Cal. 2010) 717 F.Supp.2d 965, 977, fn. 19 [collecting cases questioning the reliability of Wikipedia entries].)

"When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word. [Citations.]" (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122.) While the words "sex," "sexual," and "activity" are defined in the dictionary, there is no definition for the term "sexual activity." (See, e.g., Oxford Dictionaries Online <http://www.oxforddictionaries.com/definition/english/sex; sexual; activity > [as of Nov. 5, 2014].) Instead of the dictionary, we rely on the definition of the conduct underlying prostitution, i.e., engaging in sexual intercourse or any lewd act between persons. (See *People v. Hill* (1980) 103 Cal.App.3d 525, 534.) Defining "sexual activity" in this manner is appropriate because it pertains to the same crime for which defendant was placed on probation—soliciting another person to engage in an act of prostitution (Pen. Code, § 647, subd. (b)). It is also appropriate because the definition is "'sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated . . . .' [Citation.]" (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.)

The term "sexual intercourse" has a specific meaning which clearly communicates to defendant what is proscribed: "Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis." (CALCRIM No. 1000, original emphasis omitted [defining term for purposes of rape, Pen. Code, § 261]; accord, *People v. Dunn* (2012) 205 Cal.App.4th 1086, 1097; *People v. Karsai* (1982) 131 Cal.App.3d 224, 232, disapproved on other grounds in *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8.) "Lewd" has been defined both for purposes of prostitution-related crimes and for the offense of committing a lewd act in

16

public (Pen. Code, § 647, subd. (a)) as "'the touching of the genitals, buttocks, or female breast for the purpose of sexual arousal, [or] gratification . . . .' [Citation.]" (*People v. Hill*, *supra*, 103 Cal.App.3d at p. 534.) Using this definition preserves the constitutionality of the probation condition because, as explained by the Court of Appeal, the definition delineates the term "lewd" "in a well defined, limited manner so as to make the . . . [term] satisfy constitutional standards of specificity" and prevent the condition of probation "from being unconstitutionally vague." (*Ibid.*) This definition also allays defendant's concern regarding the sweep of the probation condition because the definition recognizes that "the varieties of sexual expression are almost infinite," and avoids banning "all sexually motivated public conduct, for such a sweeping prohibition would encompass much innocent and nonoffensive behavior." (*Pryor v. Municipal Court* (1979) 25 Cal.3d 238, 256.)

Defendant was thus provided "fair warning" to not engage in, or offer to engage in, "sexual activity," meaning sexual intercourse or any lewd act between persons, in a public place or a place open to the public, or exposed to public view. A court could readily determine whether defendant violated this condition of probation. In sum, the "core due process requirement of adequate notice" (*In re H.C.* (2009) 175 Cal.App.4th 1067, 1071-1072 ) was satisfied.

*Hotel and motel room occupancy*

The trial court did not abuse its discretion under *Lent* by barring defendant from renting, registering, occupying, or being present in any motel or hotel room "unless it is his actual residence" and it is registered or rented by him in his name.

We reject defendant's argument that "actual residence" means a place where defendant is domiciled or where he permanently lives. We construe the condition in a way that comports with the language it uses and which renders it valid. (See *People v. Turner* (2007) 155 Cal.App.4th 1432, 1436; *In re Justin S.* (2001) 93 Cal.App.4th 811, 816.)

We are guided by the definition of "residence" used in connection with the registration of sex offenders living as transients: "'[r]esidence' means one or more addresses at which a person regularly resides, regardless of the number of days or nights spent there . . . ." (Pen.

Code, § 290.011, subd. (g).)  Use of this definition is appropriate because it specifically includes hotels and motels (see Pen. Code, § 290.011, subd. (g)), and it has been held to not be unconstitutionally vague (see *People v. Gonzales* (2010) 183 Cal.App.4th 24, 37-38).  Also, the definition accounts for the specific behavior the court in this case sought to regulate—use of hotels or motels to engage in sexual activity with street-walking prostitutes.

Under the construction we adopt, reversal for abuse of discretion is unwarranted because all three of the *Lent* factors required to render the condition invalid have not been established. (See *Lent*, *supra*, 15 Cal.3d at p. 486, fn. 1.)  The conduct in the probation condition relates to behavior which is not in itself criminal.  But, being in a motel or hotel room where a person does not regularly reside, or being there when the location is not rented or registered to defendant, is related to the crime of which defendant was convicted.  In this case, defendant agreed to pay money to a person he believed to be a street-walking prostitute in exchange for sex acts to be performed in the person's motel room.

The underlying rationale is that a person will be less likely to engage in an act of prostitution in a hotel or motel room when the person is required to regularly reside there, and when there is some sort of record, such as a name in the facility's registry, documenting the person's use of the location.

With respect to the constitutionality of the probation condition, a person has the constitutional right to interstate and intrastate travel.  (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1100; *White*, *supra*, 97 Cal.App.3d at p. 148.)  A person's right to travel, "although not absolute, may be restricted only as reasonably necessary to further a legitimate governmental interest [citation]."  (*People v. Smith* (2007) 152 Cal.App.4th 1245, 1250.)  "A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad.  [Citation.]"  (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.)  "[W]here an otherwise valid condition of probation impinges on constitutional rights, such conditions must be carefully tailored, "'reasonably related to the compelling state interest in reformation and rehabilitation . . . .'"  [Citations.]"  (*People v. Bauer* (1989) 211 Cal.App.3d

937, 942.) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

The hotel/motel room condition is directly related and closely tailored to his rehabilitation because it limits the places where he can engage in sexual activity with prostitutes. Further, the burden the condition imposes on defendant's right to travel is not severe. He may travel and stay at hotels and motels, so long as he regularly resides therein, and the location is registered or rented by him using his true name. He may be present at other people's houses and apartments when he travels, even without regularly residing there. Moreover, the condition places no restrictions on the vacation rental of apartments or houses. In sum, limiting a defendant's use of a motel or hotel in order to make it more difficult for him to engage in prostitution-related sex acts is a legitimate government interest, and the present condition is reasonably necessary to further the interest.

IV.  *DISPOSITION*

The judgment is affirmed.

**CERTIFIED FOR PARTIAL PUBLICATION**

_____
Ricciardulli, J.

We concur.

_____
Kumar, Acting P. J.

_____
B. Johnson, J.