Filed 1/19/22  P. v. Sigala CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078401 |
| Plaintiff and Respondent, | (Super. Ct. No. FWV18004539) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| ENRIQUE LUIS SIGALA, | |
| Defendant and Appellant. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed December 30, 2021 be modified as follows:

1. On page 4, the fifth sentence of the top paragraph beginning with "He also admitted that Jane," is modified as follows:

> He also admitted that during that same incident, Jane touched his penis with her hand, but he denied ever having any sexual contact with Mary.

2. On page 5, the seventh sentence of the second full paragraph beginning with "Pursuant to section 1108," is deleted in its entirety and replaced with the following sentences:

Pursuant to section 1108, Jane described Sigala bathing both her and Mary, using his fingers to clean Jane's vagina. Mary, on the other hand, said Sigala did not wash her vagina. She also denied seeing him wash Jane's "private parts," but acknowledged she was generally bathed first and then waited outside the shower while Sigala bathed Jane.[Fn. 2]

3. On page 5, footnote 2, beginning "Vanessa and Mary" is deleted and replaced with the following footnote:

Vanessa and Mary likewise gave slightly conflicting accounts as to whether someone touched the butt of *Jane* or *Mary* one night while the three sisters slept in Sigala's bed, though neither was completely sure the touching in fact occurred or who did it.

4. The second sentence of the paragraph commencing at the bottom of page 19 with "During the pretext" and ending at the top of page 20 with "same conduct underlying count 2" is modified to read as follows:

During the pretext call, he admitted to Angelica that Jane touched his penis with her hand.

The petition for rehearing is denied.

There is no change in judgment.

AARON, Acting P. J.

Copies to: All parties

2

Filed 12/30/21  P. v. Sigala CA4/1 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078401 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FWV18004539) |
| ENRIQUE LUIS SIGALA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino, Daniel W. Detienne, Judge.  Affirmed as modified.  Request for judicial notice denied.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Enrique Luis Sigala of sexual intercourse with Jane Doe, a child under the age of 10, and of lewd acts with Jane and her younger sister Mary Doe.  After determining Sigala had a prior strike conviction, the court sentenced him to a total prison term of 100 years to life, plus 15 years.  Sigala makes three arguments on appeal.  Challenging his sexual intercourse conviction in count 1, he claims insufficient evidence establishes penetration (however slight) beyond Jane's labia majora.  Next he argues the court abused its discretion in excluding evidence that Jane had engaged in consensual sex with her teenage boyfriend, claiming the evidence was relevant to her credibility and could not be excluded without an evidentiary hearing under Evidence Code section 782.[1]  Finally Sigala argues, and the People concede, that ex post facto principles require us to reduce his sentences on counts 2 and 3 from 25 years to life to 15 years to life.

As we explain, sufficient evidence supports the jury's verdict on count 1; the inferences of slight penetration of Jane's external genitalia are *reasonable*, and not merely speculative as Sigala claims.  We likewise find no abuse of discretion in the trial court's exclusion of evidence regarding Jane's sexual conduct with her teenage boyfriend.  Given Sigala's admissions of molestation and touching, any evidence that Jane also may have learned sexual concepts through her boyfriend had dubious bearing on her credibility and was reasonably excluded without an evidentiary hearing under section 782.  Finally, we accept Sigala's contention that the sentences on counts 2 and 3 must be reduced to 15 years to life.  As so modified, we affirm the judgment.

---

[1]     Further undesignated statutory references are to the Evidence Code.

FACTUAL AND PROCEDURAL BACKGROUND

Jane was one of four children.  Her mother, Angelica M., met Sigala through her ex-husband.  Sigala became an integral part of the family, spending holidays and birthdays with them and sharing meals.  When Jane was about four years old and her younger sister Mary was about two, Sigala started to babysit the pair (but not their older siblings) in his one-bedroom home in Ontario.  On one of those occasions, Sigala got on top of a sleeping Jane, pulled out his penis, tried to insert it in her vagina, and simulated intercourse for about ten minutes until he ejaculated.  On another instance, Sigala made Jane and Mary touch his erect penis while he lay on the bed.  Jane did not report these incidents at the time because she did not know they were wrong.  Angelica moved the family to New Jersey but continued to stay in touch with Sigala.

When Jane was 11 or 12 years old, she told her older sister Vanessa that she had been molested and disclosed the abuse to a friend at school.  After speaking with a school counselor, 13-year-old Jane met in December 2018 with Detective Veronica Cappoli of the Bridgeton Police Department in New Jersey.  In a recorded interview, she told Cappoli that one night when she was four or five, Sigala pulled down her underwear and "tried to put his thing on my thing."  Jane believed Sigala "had cummed cuz it was sticky"; after he finished, he gave her paper towels and told her, "Go clean your pussy."  Cappoli tried to clarify whether Sigala "put his thing inside of your thing," to which Jane responded that he tried but could not do so because Jane's vagina was too small.  Her vagina "sorta hurted" the next day, but when her mom asked what happened, she said she just fell because Sigala told her not to tell anyone.

3

After taking Jane's statement, Cappoli met with Angelica and set up a pretext call in which Angelica confronted Sigala about the molestation. Telling Sigala that Jane was suicidal, she asked him to confirm whether he "put [his] penis in her intimate part." Sigala initially demurred, saying "It wasn't anything else," that he touched her only slightly "on the outside," and "the only thing that happened" was what Angelica already knew. When pressed further, he admitted he "just touched her there on the outside" with his penis pulled out while Jane was five or six years old and naked. He also admitted that Jane touched his penis with her hand.

Cappoli contacted Sergeant Kenneth Brayton of the Ontario Police Department. Brayton had two phone calls with Jane, who confirmed that what she had told Cappoli in Bridgeton was correct. Needing translation assistance, Brayton asked colleague Detective Henry Melendez to interview Sigala following his arrest in December 2018. Sigala admitted molesting Jane one time, saying he "touched her with my penis" in "her private part." Asked what part he meant, Sigala clarified that he just touched her a little but did not penetrate inside. He recounted lying on top of Jane and simulating intercourse for about ten minutes or less until he ejaculated. Melendez pressed for further clarification, and Sigala explained that he touched the top part of Jane's vagina with his erect penis without inserting his penis inside the opening. He denied having felt Jane's vaginal opening with his penis but agreed his penis touched her vaginal labia. Detective Melendez explained at trial that he understood Sigala to be explaining in Spanish that his penis touched Jane's vaginal area without going inside.

In October 2019 the San Bernardino County District Attorney charged Sigala by second amended information with having sexual intercourse with Jane Doe, a child 10 years old or younger (Pen. Code, § 288.7, subd. (a)),

4

committing a lewd act upon Jane (*id.*, § 288, subd. (a)), and committing a lewd act upon her younger sister Mary (*ibid.*). As to all three counts, the People alleged that Sigala had suffered a prior serious felony conviction (*id.*, § 667, subd. (a)(1)). As to the lewd acts charged in counts 2 and 3, it was alleged that Sigala committed the offenses against multiple victims under the age of 14 (*id.*, § 667.61, subds. (e)(4) & (j)(2)). The court granted Sigala's request to bifurcate the trial on the strike prior.

At trial, the jury heard testimony from Jane, Mary, their sister Vanessa, and their mother Angelica. Also testifying were law enforcement witnesses Cappoli, Melendez, and Brayton. Recordings of police interviews of Jane and Sigala, and of the pretext call between Angelica and Sigala, were played in court.

Jane was the prosecution's main witness. She largely confirmed her prior statements to Cappoli that once when she was four or five, Sigala lay on top of her when she was sleeping, pulled down her underwear, took out his penis, and tried to put it in her vagina but said he couldn't because her opening was too small. She remembered Sigala moving back and forth for some time. He later handed her a napkin and told her to clean up; she wiped a wet substance close to her vagina, and her vagina hurt afterwards. The next morning, Sigala apologized and asked Jane to forgive him. Jane also testified about an incident in which Sigala let her and Mary play with his penis as he lay down. Pursuant to section 1108, Jane described Sigala bathing both her and Mary, using his fingers to clean Jane's vagina; Mary offered a slightly conflicting account.[2]

---

[2] Vanessa and Mary likewise gave slightly conflicting accounts as to whether Sigala touched the butt of *Jane* or *Mary* one night while the three sisters slept in Sigala's bed.

The jury convicted Sigala as charged and found the multiple victim allegations attached to counts 2 and 3 true. Following a bench trial on the strike prior, the court concluded that Sigala was previously convicted in 1988 under Penal Code section 288, subdivision (a). Sigala moved for a new trial, arguing among other things that the prosecutor improperly argued matters she successfully prevented the defense from exploring under Evidence Code section 782. Denying the motion, the court proceeded to sentencing. Explaining he would sentence Sigala "to the maximum amount of time allowed by law" Judge Detienne imposed a total indeterminate term of 100 years to life, consisting of 25 years to life on count 1, doubled for the strike (Pen. Code, §§ 288.7, subd. (a), 667, subd. (e)(1)), and consecutive terms of 25 years to life on counts 2 and 3 (*id.*, § 667.61, subd. (j)(2)). In addition, the court sentenced Sigala to a determinate term of 15 years, consisting of a 5-year enhancement attached to each count for the prior serious felony conviction (*id.*, § 667, subdivision (a)(1)).

DISCUSSION

Sigala raises three arguments on appeal. As the constitutional challenge to his sentence on counts 2 and 3 is appropriately conceded by the People, we focus mainly on the remaining two. First, Sigala argues there was insufficient evidence of penetration to support his conviction on count 1 for sexual intercourse with Jane. Second, he contends the trial court abused its discretion in excluding evidence pertaining to Jane's sexual history under section 782. Finding no error on either ground, we reduce his sentences on counts 2 and 3 based on ex post facto considerations and otherwise affirm.

A. *Sufficiency of the Evidence*

Sigala was convicted in count 1 of sexual intercourse with Jane in violation of Penal Code section 288.7, subdivision (a), which proscribes an

6

adult age 18 or older engaging in sexual intercourse or sodomy with a child age 10 or younger.[3] "Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis." (*People v. Mendoza* (2015) 240 Cal.App.4th 72, 79; see CALCRIM No. 1127.) Penetration of the victim's labia majora, without further penetration into the vagina, is enough. (*People v. Dunn* (2012) 205 Cal.App.4th 1086, 1097; *People v. Karsai* (1982) 131 Cal.App.3d 224, 232; see *People v. Quintana* (2001) 89 Cal.App.4th 1362, 1371 [the labia majora form the outer boundary of the female genitalia, or vulva].)

At trial, the prosecution bears the burden "to prove the required penetration beyond a reasonable doubt." (*People v. Paz* (2017) 10 Cal.App.5th 1023, 1038; see *In re Winship* (1970) 397 U.S. 358, 364.) This proof may be made by circumstantial evidence. (*People v. Stevenson* (1969) 275 Cal.App.2d 645, 650; see *People v. Holt* (1997) 15 Cal.4th 619, 669 (*Holt*).)[4] It may likewise rest on *inferences* drawn from circumstantial evidence, provided

---

[3] There was no dispute that Jane was younger than 10 when the alleged incident occurred. She testified that she was four or five; Sigala believed she was either five or six, or between seven and nine.

[4] "[W]hen the prosecution's case rests substantially on circumstantial evidence, trial courts must give 'an instruction embodying the principle that to justify a conviction on circumstantial evidence the facts and circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion.'" (*People v. Livingston* (2012) 53 Cal.4th 1145, 1167, quoting *People v. Yrigoyen* (1955) 45 Cal.2d 46, 49.) Consistent with this rule, the court instructed the jury under CALCRIM No. 224 that if it could draw two or more reasonable conclusions from the circumstantial evidence, with one pointing to innocence and the other pointing to guilt, it was required to "accept the one that points to innocence." The instruction also explained that "when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

those inferences are "logical and reasonable, not merely speculative." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 405; see *People v. Babbitt* (1988) 45 Cal.3d 660, 681; *People v. Wright* (2016) 4 Cal.App.5th 537, 546.)

Sigala argues on appeal that there was insufficient evidence to support a reasonable jury finding that he penetrated Jane's labia majora even slightly during the admitted molestation. "In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 (*Kraft*).) "The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*Ibid.*) "The same standard applies when the conviction rests primarily on circumstantial evidence." (*Ibid.*) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

The jury received a general overview of female genital anatomy, with Cappoli explaining that the labia majora protects the vaginal opening and lies towards the outside or bottom of the female genitalia. Strong evidence of labial penetration came from defendant's own words: Sigala told Detective Melendez during his police interview, "I touched her with my penis . . . in her private part." Asked what he meant by "private part," he clarified he meant the vagina, but only the "top" part. He denied penetrating "inside" the vagina or feeling the vaginal opening or walls with his penis, repeatedly

8

stating that he touched "just on the top," by which he meant the vaginal labia. Sigala admitted having an erection and ejaculating after about ten minutes of simulated intercourse. Melendez, who conducted the interview in Spanish, explained to the jury that he understood Sigala's references to touching the "top" to mean that his penis touched Jane's vaginal area without penetrating further inside. Sigala likewise made admissions during his pretext call supporting a reasonable inference of penetration. When Angelica confronted him, stating Jane "says that you put your penis in her intimate part," he replied that "[i]t wasn't anything else" and the only thing that happened was "what you already know."[5]

Jane also offered compelling circumstantial evidence of penetration. She testified that Sigala took out his penis and tried "to put it in" her vagina but told her that her vagina was too small for his penis to go in. Sigala moved "back and forth" until he ejaculated between her thighs, close to Jane's vagina. Getting off her, Sigala directed her to "clean [her] pussy." Afterwards Jane experienced vaginal pain.

To convict Sigala on count 1, the jury had to find beyond a reasonable doubt that slight penetration of Jane's labia majora occurred. Ample evidence supports such a finding. Sigala's admissions that his penis touched her "in her private part," his statement to Jane that her vagina was too small for further penetration, his direction to "clean your pussy" after prolonged

---

[5] The jury was instructed under CALCRIM No. 359 that Sigala could not be convicted "based on his out-of-court statements alone" and told to rely on those statements to convict only if it first found that other evidence supported a reasonable inference that a crime was committed. (See generally, *People v. Sanchez* (2016) 246 Cal.App.4th 167, 173 [corpus delicti requirement].) Here, as the defense conceded, the evidence amply established the lesser included offense of battery, permitting reliance on Sigala's out-of-court statements to convict him of the greater offense.

9

simulated intercourse, and the vaginal pain Jane experienced afterwards all support a nonspeculative inference that slight penetration occurred. "Where an inference has support in established facts and is a reasonable deduction or extension of that evidence, it cannot be condemned as speculative." (*Dimond v. Caterpillar Tractor Co.* (1976) 65 Cal.App.3d 173, 184–185.)[6] Moreover, the parties stipulated that Sigala had previously been convicted of a lewd and lascivious act on Jennifer E., a child under the age of 14, and jurors were instructed under CALCRIM No. 1191A that they could consider this to conclude Sigala was "disposed or inclined to commit sexual offenses," and therefore "likely to commit" the charged crimes.

"Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the *jury*, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt." (*Kraft, supra,* 23 Cal.4th at pp. 1053–1054, italics added.) If the circumstances reasonably justify the jury's findings, reversal is not warranted merely because a reviewing court believes the circumstances might also reasonably be reconciled with a different finding. (*Id.* at p. 1054.)

---

[6]     Sigala suggests that Jane must have *speculated* from his comment about her being too small that he tried to penetrate her vagina. He suggests the comment could also support an inference that he knew a five-year-old's anatomy would be too small to make any attempt at penetration. While Jane did testify at trial that she *guessed* Sigala was trying to penetrate her vagina based on his comment to her, the jury also heard her more definitive statement to Detective Cappoli that he tried to do so. We do not reweigh the evidence or reevaluate witness credibility on appeal. (*People v. Brown* (2014) 59 Cal.4th 86, 106.) And contrary to Sigala's suggestion on reply, the jury's finding of penetration rests on far more than evidence of back and forth movement for ten minutes while Sigala lay on top of Jane.

*Holt*, a case neither party cites, is instructive. A defendant convicted of rape did not dispute sexually assaulting the victim but claimed the evidence failed to establish the requisite penetration of her vagina. (*Holt, supra,* 15 Cal.4th at p. 668.) An emergency room physician who examined the victim after the assault observed vaginal redness and testified it was consistent with either penile penetration or an infection and said there were no other signs of infection. Laboratory results indicated no traumatic evidence of penetration, and no blood or semen was found in the victim's vagina. The defendant suggested on appeal that the vaginal redness could have been caused by an infection, for which one of the medications the victim was taking was sometimes prescribed. (*Ibid.*) Rejecting his contention that the jury verdict was therefore based solely on *speculation*, the court explained that the vaginal redness could support one of two inferences—sexual penetration or a different cause. (*Id.* at p. 669.) All that mattered on appeal was that the jury's inference of vaginal penetration based on the redness and defendant's own admission of assault was *reasonable*; the existence of another possible explanation did not make that inference speculative. (*Ibid.*)

Similarly, the jury's inference of slight penetration was reasonably drawn from the evidence presented, and the jury could rely on that inference to find Sigala guilty beyond a reasonable doubt. "That the evidence might lead to a different verdict does not warrant a conclusion that the evidence supporting the verdict is insubstantial." (*Holt, supra,* 15 Cal.4th at p. 669.)

B.     *Evidentiary Error*

Arguing that evidentiary error infected his convictions on all three counts, Sigala challenges the court's exclusion of evidence that Jane had sex with her teenage boyfriend prior to reporting Sigala's abuse. He claims such evidence was relevant to Jane's credibility and contends it was reversible

11

error to exclude the evidence from trial without first holding an evidentiary hearing under section 782. We reject this claim, finding the excluded evidence bore such dubious relevance to Jane's credibility that there was no error in excluding it without first holding an evidentiary hearing.

1. *Legal Principles*

Evidence of a complaining witness's prior sexual conduct is admissible "only under very strict conditions." (*People v. Fontana* (2010) 49 Cal.4th 351, 362 (*Fontana*).) In rape cases, for example, a defendant may not introduce evidence of a complaining witness's prior sexual conduct to prove consent. (*Ibid.*; see Pen. Code, § 1103, subd. (c)(1).)[7] As an exception to this rule, evidence of a complaining witness's prior sexual history may be admissible when offered to attack his or her credibility and is presented in accordance with Evidence Code section 782. (*People v. Mestas* (2013) 217 Cal.App.4th 1509, 1514−1515 (*Mestas*).)[8]

A defendant seeking to introduce evidence of the complaining witness's prior sexual conduct must file a written motion detailing the relevance of the proffered evidence to the victim's credibility. (*Fontana, supra,* 49 Cal.4th at pp. 354, 362; § 782, subd. (a)(1)−(2).) "[T]he trial court need not even hold a

---

[7] Codified at Penal Code section 1103, subdivision (c)(1), the rape shield law applies to prosecutions under Penal Code sections 261 (rape), 264.1 (rape in concert), 286 (sodomy), 287 (oral copulation), 289 (forcible sexual penetration), or former section 288a (renumbered to 287). The statute does not list Penal Code sections 288.7 or 288, perhaps because a child victim's consent is *immaterial* in molestation cases. (*People v. Soto* (2011) 51 Cal.4th 229, 238.)

[8] Section 782, subdivisions (c)(1) and (c)(3) apply by their terms to lewd act prosecutions and testimony offered under section 1108. Although both pertain to Jane's testimony here, the statute does not expressly refer to prosecutions under Penal Code section 288.7, as charged in count 1. In any event, Sigala makes no argument that this omission affects our analysis.

hearing unless it first determines that the sworn offer of proof is sufficient." (*People v. Rioz* (1984) 161 Cal.App.3d 905, 916 (*Rioz*); accord *Mestas, supra,* 217 Cal.App.4th at p. 1514.)  If the offer is sufficient, then the court holds an evidentiary hearing outside the jury's presence where the defense may question the witness regarding the offer of proof.  (*Fontana,* at pp. 354, 362; § 782, subd. (a)(3).)  "If the court finds the evidence relevant under section 780 and admissible under section 352, the court may make an order stating what evidence may be introduced by the defendant and what questions are permitted." (*Fontana*, at p. 354.)

Recognizing the privacy concerns at stake, courts exercise their discretion under section 782 *narrowly*, taking great care to ensure the exception does not become a back door for admitting otherwise inadmissible evidence.  (*Fontana, supra,* 49 Cal.4th at pp. 362–363.)  Thus, for example, section 782 permitted inquiry into a child victim's prior molestation to counteract the inference that if the child accurately describes the acts, he or she "must have learned of these acts through the defendant."  (*People v. Daggett* (1990) 225 Cal.App.3d 751, 757 (*Daggett*).)  Other courts reached the opposite conclusion where the child victim's proffered sexual history was insufficiently similar to the charged crimes.  (*Mestas, supra,* 217 Cal.App.4th at p. 1517; *People v. Woodward* (2004) 116 Cal.App.4th 821, 832.)

"A trial court's ruling on the admissibility of prior sexual conduct will be overturned on appeal only if appellant can show an abuse of discretion." (*People v. Chandler* (1997) 56 Cal.App.4th 703, 711.)  Abuse is not shown unless "the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.)  This same standard applies

where the evidence is excluded without holding an evidentiary hearing under section 782. (See *Mestas, supra,* 217 Cal.App.4th at p. 1517.)

2. *Additional Background*

The issue of Jane Doe's postmolestation sexual history came up at multiple points before, during, and after trial. Although Sigala challenges the evidentiary rulings alone, he claims prejudice from what ultimately transpired, meriting some discussion of subsequent events.

Before trial, the People filed a motion in limine to exclude evidence concerning Jane's and Mary's sexual history. Defense counsel initially agreed that such evidence would generally be inadmissible unless specific information became relevant for impeachment. On receiving a transcript of Angelica's pretext call, however, Sigala moved under section 782 to introduce evidence that Jane had had consensual intercourse with her boyfriend after the alleged molestation but before reporting to police. Relying on *Daggett, supra,* 225 Cal.App.3d 751, he claimed this evidence was necessary to explain Jane's graphic knowledge of the alleged molestation and cast doubt on the resulting inference that she must have learned of those acts through him. Defense counsel submitted the following offer of proof:

> "I am informed and believe that Jane Doe disclosed to a counselor and detectives investigating this case that she has had consensual sexual intercourse with her boyfriend subsequent to these allegations but prior to reporting the alleged acts to police. Jane Doe described pain and that the defendant ejaculated. During the course of the investigation and pretext call, there was discussion that it must be true since Jane Doe was a child and there would be no other way for her to be aware that there would be ejaculation. However, Jane Doe disclosed to investigators that she has been sexually active and uses protection because 'obviously, yeah. I'm not that dumb.' Which shows that . . . she is aware of the mechanics of a penis, ejaculation, and what semen is. It would also show that

14

> since she has had consensual intercourse prior to disclosure she would be aware . . . that penetration of the vagina can cause pain or discomfort afterwards."

Responding to timeliness concerns, Sigala argued the need for this inquiry became apparent only upon receiving a translated transcript of the pretext call: Angelica told Sigala that Jane mentioned ejaculation and asked, " 'How would a child know these things if you didn't do it?' " The prosecutor responded that a mother's offhand comment did not change the court's prior analysis.

Following a brief recess, the court denied the motion without holding an evidentiary hearing under section 782. It explained that the matter had been addressed and decided at the earlier hearing. To the extent recent discovery changed matters, the court determined the evidence solicited by the defense was not relevant to Jane's credibility:

> "[L]ooking at the arguments, and thinking about the arguments, under [section] 782, past sexual history of an alleged victim has to go to credibility. That's the whole point of the court allowing that to happen. And the argument here is -- I understand it essentially is that her subsequent consensual sexual history as . . . an older person is the reason she knows what happened when she was a child. That's why she knows she was molested. That to me seems so broad that any victim who had a past consensual sexual history, that argument can be made in every case and it would swallow up [section 1103, subdivision (c)] of the Evidence Code. So I don't think the offer of proof supports that we should get into it to go to Jane Doe's credibility."

15

In denying the motion without a hearing, the court further explained that any probative value of the solicited evidence would be far outweighed by its prejudicial effect under section 352.[9]

Trial began, and Jane testified about the charged incidents. On cross-examination, defense counsel asked whether Sigala was circumcised. Jane said she did not understand, prompting counsel to ask if she had seen a penis before. The court sustained the prosecutor's relevancy objection but permitted the defense to elicit testimony from Jane that she had taken sexual education classes after the alleged molestation occurred. Jane stated she did not learn about a circumcised versus uncircumcised penis in her sex ed class; nor could she describe what a penis looked like.

Following Jane's testimony, Sigala renewed his request for a section 782 hearing. Because jurors might be inclined to view her testimony through the lens of a sexually inexperienced 14 year old, he sought to establish that Jane in fact knew of sex through experiences with her boyfriend. Counsel found it "ridiculous" that Jane could not describe a penis or state whether Sigala was circumcised given her consensual sexual activity and asserted this evidence was relevant to assess her credibility. Disagreeing, the prosecutor stated nothing in Jane's testimony changed the court's prior analysis. Jane's activity with her boyfriend had no bearing on her testimony that she did not know what circumcision meant or what a penis looked like.

Agreeing with the prosecution, the court denied the request. It was apparent from Jane's sex ed class that there were other places she could have

---

[9]    Section 352 permits the court in its discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

learned about a penis besides conduct with her boyfriend. Nor did the court agree to Sigala's request to then redact Angelica's statement during the pretext call about how six-year-old Jane would have known about ejaculation had it not occurred.

During closing arguments, the prosecutor quoted Jane's statement to Detective Cappoli that Sigala took out his " 'thing.' " She explained that Jane was "a kid" who "doesn't always use anatomically correct language," and suggested "[a] four or five year old would not understand the mechanics of sexual intercourse" to describe penetration more precisely. She likewise stated that then-13-year-old Jane did not "use a big adult word like 'erection' " to support the lewd acts charged in counts 2 and 3, but instead described Sigala's penis as " 'standing up' "—"Something a kid might say because she is a kid."

Responding to these characterizations, defense counsel argued there was no evidence Jane was "an innocent child who doesn't know anything." Stating Jane was "the type of 13-year-old that uses the word 'pussy' and 'cum,' " counsel remarked that "nobody got to ask her about her sexual experience, what she knows." The prosecutor objected, and the court reminded the jury that nothing the attorneys said was evidence. Resuming, counsel stated the jury should find that Jane "clearly knows what's going on," and having taken a sex ed course, should be viewed differently than a five-year-old testifying about recent events. She suggested that testimony about Angelica's preoccupation with checking for Jane's virginity may have suggested a boyfriend. The prosecutor again objected; the court sustained and told counsel to move on. Counsel then pointed out that given the molestation of her older sister and rape of her mother, Jane was not "an innocent person who knows nothing about these type of things" but rather

17

someone who inhabited that universe and may have supplanted memories of "the things that happened way back a long time ago" based on her family's experiences.

The prosecutor argued in rebuttal that this case was not about whether it was acceptable for a 14-year-old girl to be using words such as " 'pussy' " or " 'cum,' " but rather about whether Sigala molested Jane and Mary. She urged that this was "not a complex case" notwithstanding slight inconsistencies in Jane's reports.

Once the jury was excused for deliberations, Sigala moved for a mistrial, claiming the court not only prevented a defense by denying a section 782 hearing but also erroneously sustained the prosecutor's objection to his permissible closing argument. The court denied the motion. Following the verdicts, Sigala filed a new trial motion, again challenging the court's evidentiary ruling and the prosecutor's closing remarks. Discussing the various motions and prior rulings, the court commented that defense counsel was ultimately able to make the argument "that Jane Doe did not necessarily get this language or the terms from her interactions with Sigala but through other sources." It denied the new trial motion on this and other grounds.

3. *No Evidentiary Error Occurred*

Sigala sought to offer evidence that Jane—age 5 at the time of the molestation, age 13 at initial disclosure and age 14 at trial—had consensual sex with her boyfriend prior to reporting Sigala's abuse. In his view, this evidence tended to rebut the inference that Jane must have learned about erection, ejaculation, and vaginal postintercourse pain through Sigala. He challenges the court's exclusion of this evidence without first holding an evidentiary hearing under section 782. But a trial court need not hold an evidentiary hearing "unless it first determines that the defendant's sworn

18

offer of proof is sufficient." (*Rioz, supra,* 161 Cal.App.3d at p. 916; accord *Mestas, supra,* 217 Cal.App.4th at p. 1514; see § 782, subd. (a)(3).) Evidence is relevant to a witness's credibility if it has "any tendency in reason to prove or disprove the truthfulness of his [or her] testimony at the hearing," such as, for example, evidence concerning the witness's "capacity to perceive, to recollect, or to communicate any matter about which he [or she] testifies." (§ 780, subd. (c).) As we explain, the trial court did not abuse its discretion in determining that Jane's sexual activity with her teenage boyfriend had no tendency in reason to affect her capacity to perceive, recollect, or communicate details of Sigala's abuse.

Consistent with Sigala's appellate briefs, nothing in defense counsel's offer of proof suggested that what Jane learned through sex with her boyfriend called the credibility of her testimony on counts 1 through 3 into question. At best, counsel's affidavit suggested that having had sex with her boyfriend, 14-year-old Jane inferentially knew how sex felt and knew enough about it to understand that unprotected sex could result in pregnancy. "The purpose of an Evidence Code section 782 hearing is to establish the truth and probative value of the offer of proof, not to allow a fishing expedition based on sketchy and unconfirmed allegations." (*Mestas, supra,* 217 Cal.App.4th at p. 1518.) Sigala's vague, speculative offer that Jane's consensual activity with her teenage boyfriend might have affected her ability to recollect Sigala's years-old molestation invited a fishing expedition.

Sigala's admissions undermine any claim that the court erred in excluding the evidence without holding a hearing. During the pretext call, he admitted to Angelica that Jane touched his penis with her hand—i.e., the

19

same conduct underlying count 2.[10]  He likewise admitted to Detective Melendez that he touched Jane with his penis "in her private part."  While denying *full* penetration (as did Jane), he did not dispute the basic essence of Jane's account—on one occasion when she was young, he touched her vagina with his erect penis and simulated intercourse until he ejaculated.  Having admitted to an erection, ejaculation, simulating intercourse, and Jane touching his penis, the court reasonably determined that evidence of Jane's consensual sexual activity with her teenage boyfriend lacked any probative value.[11]  We agree with the People that Jane's sexual activity with her boyfriend raised no reasonable questions regarding the accuracy of her account where Sigala's own admissions confirmed "she obtained sexual knowledge from *him* at a very young age."

Sigala's admissions readily distinguish this case from *Daggett*, in which the defendant "denied that he had ever molested [the complaining witness]." (*Daggett, supra,* 225 Cal.App.3d at p. 755.)  That Sigala contested "the exact nature of the touching (whether penetration occurred)" in count 1 and whether Mary touched his penis as charged in count 3 does not change this

---

[10]    Sigala overlooks this admission in focusing on his denial to Detective Melendez that Jane or Mary touched his penis.

[11]    Jane could not say whether Sigala was circumcised and could not describe how a penis looked.  Sigala argues Jane's inability to describe his penis could suggest she never actually touched it.  He posits that had Jane seen a penis only once at age five, a vague description might be understandable, but a vague description despite "recent experience with male genitalia" undercut the credibility of her allegations on counts 2 and 3.  We question how evidence of Jane seeing her *boyfriend's* penis could suggest, contrary to her account *and Sigala's*, that she had not touched his.  And it is a stretch to suggest as Sigala does that impeachment on a collateral issue— that Jane could in fact describe a penis because she had seen her boyfriend's—was "quite relevant to her credibility."

20

analysis absent any offer of proof as to what Jane would have learned from sex with her boyfriend that might cast doubt on her credibility as to those particular topics. (See *Mestas, supra,* 217 Cal.App.4th at p. 1517 [trial court reasonably excluded evidence without a section 782 hearing where there was no suggestion "she learned something from that incident that would inform the jury that some of [her] testimony in this case may be false"].)

The trial court also keenly noted that accepting Sigala's offer of proof would construe section 782 broadly, opening any complaining witness with a sexual history to an evidentiary hearing. Sigala suggests the court's reasoning may be correct as to a 24-year-old complaining witness, but not as to a child who jurors would presume "not to be familiar with sex." But Sigala does not offer, nor have we found, any basis to apply broader admissibility criteria under section 782 where *children*, as opposed to adults, complain of sexual abuse. Although Sigala suggests Jane's sexual history might be relevant to establish not only whether she lied but also whether she sincerely but erroneously filled gaps in her memory, the same can be said of anyone with subsequent sexual history seeking to testify about childhood abuse. Recognizing that section 782 should be construed *narrowly* (*Fontana, supra,* 49 Cal.4th at pp. 363–364), the court acted well within its discretion in excluding the proffered evidence without holding an evidentiary hearing under section 782.[12]

_____

12    Sigala was able to explore whether Jane learned about sexual concepts elsewhere, such as in a sex ed course or through her relatives. Jane's statement to Cappoli that Sigala's failure to use protection could not have impregnated her given her age suggested that then-13-year-old Jane had a basic understanding of how sex worked. Defense counsel repeatedly argued in closing that Jane was not some naïve girl who must have learned of such concepts through Sigala. These events would seem to negate prejudice, an issue we do not reach given our conclusion that no error occurred. Moreover,

C.    *Sentencing Error*

Sigala received a one-strike sentence of 25 years to life on the lewd act convictions in counts 2 and 3 pursuant to Penal Code section 667.61, subdivision (j)(2) based on the jury's finding that the offenses occurred against multiple victims.  Prior to September 9, 2010, Penal Code section 667.61 only imposed a sentence of 15 years to life for such conduct.  (*People v. Betts* (2020) 55 Cal.App.5th 294, 299 (*Betts*).[13])  Sigala claims his sentences on counts 2 and 3 violated ex post facto principles because the jury was not asked to find that the event (a single incident in which Sigala told Jane and Mary to play with his erect penis) occurred before September 9, 2010.  We agree.

The second amended information alleged that count 2 took place between August 2008 and August 2019 and count 3 took place between

_____

we note that excluding evidence having dubious relevance to Jane's credibility does not implicate Sigala's confrontation clause rights.  (See *People v. Bautista* (2008) 163 Cal.App.4th 762, 783.)

[13]    Previously Penal Code section 667.61, subdivision (b) imposed a 15 years-to-life term for a defendant convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e)— for example, by committing the offense against more than one victim.  Effective September 9, 2010, the Legislature amended the statute (see Stats. 2010, ch. 219, § 16) to increase penalties imposed on defendants convicted of sexual offenses against minors.  (*Betts, supra,* 55 Cal.App.5th at p. 299.)  Subdivision (j)(2) of section 667.61 now imposes a 25 years-to-life term for a defendant convicted of an offense specified in subdivision (c) against more than one victim as specified in subdivision (e)(4), *if* the victim is under the age of 14.
　　　　Sigala requests judicial notice of legislative materials reflecting the change in sentencing law on September 9, 2010.  Because "judicial notice of published materials is unnecessary" and citation to the material will suffice (*Quelimane Co.v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45, fn. 9), the request is denied.

February 2008 and December 2018.  Jane could not remember exactly, but suggested to Cappoli that Mary was probably one or two at the time it happened, placing the incident as early as February 2009.  In her closing arguments, the prosecutor told the jury it only needed to find that Jane and Mary were under 14, and not the exact date the touching occurred.  Based on this record, the People concede that Sigala's sentences in counts 2 and 3 must be reduced to 15 years to life.

"The California and federal Constitutions prohibit the enactment of ex post facto laws." (*People v. Cawkwell* (2019) 34 Cal.App.5th 1048, 1054; see Cal. Const., art. I, § 9; U.S. Const., art. I, § 9, cl. 3, and § 10, cl. 1.)  "Both constitutions protect against the later adoption of a statute that inflicts greater punishment than the law in effect at the time of the commission of the crime." (*People v. Riskin* (2006) 143 Cal.App.4th 234, 244, citing *Collins v. Youngblood* (1990) 497 U.S. 37, 42–43 & *People v. Grant* (1999) 20 Cal.4th 150, 158.)  A claim that a sentence is unauthorized may be raised for the first time on appeal. (*People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6.)  Where, as here, the jury is not asked to determine when the offense occurred, an appellate court must decide whether "the evidence leaves no reasonable doubt" that it occurred after the statute took effect. (*People v. Hiscox* (2006) 136 Cal.App.4th 253, 261.)

As the People appropriately concede, the record is ambiguous as to whether the lewd acts in counts 2 and 3 occurred after September 9, 2010, when the amendment took effect.  We accordingly reduce those sentences to

23

15 years to life as provided under Penal Code section 667.61, former subdivision (b).[14]

## DISPOSITION

The sentences on counts 2 and 3 are reduced from 25 years to life to 15 years to life.  The clerk of the superior court is directed to prepare an amended abstract of judgment reflecting this change and forward a copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


DATO, J.

WE CONCUR:


AARON, Acting P. J.


DO, J.

---

[14]    Former subdivision (b) of Penal Code section 667.61 mandated a 15 years-to-life sentence, and subdivision (g) of that statute has at all relevant times precluded striking a multiple victim circumstance.  The trial court stated its intention to impose "the maximum amount of time allowed by law," and the former One-strike law mandated 15 years-to-life terms.

24